[910 NE2d 983, 883 NYS2d 154]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE MINGO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DZEMIL BALIC, Appellant.

Argued May 5, 2009; decided June 9, 2009

## POINTS OF COUNSEL

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Susan Epstein* and *Steven Banks* of counsel), for appellant in the first above-entitled action. Because the only evidence the People submitted to support the assignment of 30 points to appellant on the Risk Assessment Instrument, under risk factor 1, for being armed with a dangerous instrument, was a "Data Analysis Form" and "Grand Jury Synopsis Sheet," which contained handwritten notes made by unknown persons and derived from unacknowledged sources, the evidence failed to qualify as reliable hearsay and, therefore, the People failed to meet the standard of clear and convincing evidence to support appellant's classification as a level two sex offender. (*Doe v Pataki*, 481 F3d 69; *People v David W.*, 95 NY2d 130; *E.B. v Verniero*, 119 F3d 1077; *Addington v Texas*, 441 US 418; *Matter of Poldrugovaz*, 50 AD3d 117; *Colorado v New Mexico*, 467 US 310; *Matter of Westchester County Med. Ctr. [O'Connor]*, 72 NY2d 517; *Matter of Storar*, 52 NY2d 363; *Calhoun v Bailar*, 626 F2d 145; *Richardson v Perales*, 402 US 389.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Anthea H. Bruffee* and *Leonard Joblove* of counsel), for respondent in the

first above-entitled action. The hearing court properly considered as reliable hearsay evidence documents generated by the District Attorney's office in prosecuting the underlying sex crime. Thus, defendant's designation as a risk level two sex offender was based upon clear and convincing evidence. (*People v Vasquez,* 20 Misc 3d 37; *People v Stirrup,* 91 NY2d 434; *People v Giordano,* 87 NY2d 441; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *People v Imbert,* 48 AD3d 297; *People v Concepcion,* 38 AD3d 739; *People v Wroten,* 286 AD2d 189; *People v Hines,* 24 AD3d 524; *People v Smolen,* 47 AD3d 623; *People v Smith,* 5 AD3d 752.)

*James Ching,* of the California bar, admitted pro hac vice, pro se, amicus curiae in the first above-entitled action. I. The evidence before the trial court was official and business records to which defendant made no specific objection, and therefore the issue cannot be raised on appeal. (*People v Cratsley,* 86 NY2d 81; *People v Guidice,* 83 NY2d 630; *People v Kennedy,* 68 NY2d 569.) II. The evidence before the trial court was official and business records which does not appear to contain testimonial hearsay. (*Doe v Pataki,* 3 F Supp 2d 456; *People v Brooks,* 308 AD2d 99; *United States v Feliz,* 467 F3d 227.)

*Legal Aid Society, Criminal Appeals Bureau,* New York City (*Amy Donner* and *Steven Banks* of counsel), for appellant in the second above-entitled action. Double hearsay by an unsworn complainant in a criminal court complaint pursuant to which appellant pleaded guilty to misdemeanor assault did not constitute "reliable hearsay" or satisfy the standard of clear and convincing evidence necessary to support an upward departure under the Sex Offender Registration Act (SORA), where this hearsay was the sole source of evidence supporting the sexual nature of the misdemeanor assault conviction and, therefore, the People failed to meet the standard of clear and convincing evidence to support appellant's classification as a level two sex offender under SORA. (*People v Guaman,* 8 AD3d 545; *People v David W.,* 95 NY2d 130; *E.B. v Verniero,* 119 F3d 1077; *Doe v Pataki,* 3 F Supp 2d 456; *Doe v Department of Pub. Safety ex rel. Lee,* 271 F3d 38; *Mathews v Eldridge,* 424 US 319; *Valmonte v Bane,* 18 F3d 992; *Matter of VanDover v Czajka,* 276 AD2d 945; *Addington v Texas,* 441 US 418; *Matter of Poldrugovaz,* 50 AD3d 117.)

*Robert M. Morgenthau, District Attorney,* New York City (*Dana Poole* and *Patrick J. Hynes* of counsel), for respondent in the

second above-entitled action. The facts underlying defendant's third-degree assault conviction were properly considered by the hearing court and supported an upward departure to a level two risk adjudication. (*People v Windham,* 10 NY3d 801; *People v Charache,* 9 NY3d 829; *People v Costello,* 35 AD3d 754; *People v Johnson,* 11 NY3d 416; *People v Moore,* 16 AD3d 190; *People v Wheeler,* 59 AD3d 1007; *People v Warren,* 42 AD3d 593; *People v Cannon,* 34 AD3d 1227; *People v Warrior,* 57 AD3d 1471; *People v Arotin,* 19 AD3d 845.)

### OPINION OF THE COURT

GRAFFEO, J.

In these appeals, we address what constitutes "reliable hearsay" that is admissible for purposes of determining the appropriate risk level of a sex offender under the Sex Offender Registration Act (SORA). In *People v Mingo,* we conclude that, with the proper foundation, internal documents generated by the District Attorney's office may support a risk level adjudication but, since Supreme Court did not require such a foundation, we reverse and remit to afford the District Attorney's office an opportunity to supply that proof. We affirm the determination in *People v Balic* because the Appellate Division did not err in designating defendant a level two risk based on a victim's statement included in a criminal court complaint prepared by a police officer under oath.

### *People v Tyrone Mingo*

In 1990, defendant Tyrone Mingo pleaded guilty to rape in the first degree in satisfaction of a series of charges relating to a 1988 incident in which he pulled a stranger into an abandoned van and raped her. The victim managed to escape and flag down a passing police officer and defendant was arrested at the scene. At a SORA redetermination hearing in February 2006,[1] defendant was adjudicated a level two risk—that is, a moderate risk of reoffense—based, in part, on the assessment of 30 points under factor 1 of the Risk Assessment Instrument (RAI) for having been armed with a dangerous instrument at the time of

---

1. Defendant, who was among the class of sex offenders who were incarcerated, on parole or on probation when SORA became effective in January 1996, was afforded a redetermination hearing as a result of a settlement in federal litigation that involved a challenge to the procedures used to determine sex offenders' initial risk level determinations (*see Doe v Pataki,* 3 F Supp 2d 456 [SD NY 1998]).

the rape.[2] To establish defendant's possession of a dangerous instrument, the District Attorney relied on three documents that are apparently used internally by the District Attorney's office: a Data Analysis Form, a Grand Jury Synopsis Sheet and an Early Case Assessment Bureau Data Sheet.[3] Various entries on these forms indicated that, in the course of the incident, defendant had threatened the victim with a "chrome strip" or "piece of metal"—a dangerous instrument.

Defense counsel objected to the District Attorney's reliance on these unsworn, unsigned documents, contending they did not constitute "reliable hearsay" under Correction Law § 168-n (3) and were therefore inadmissible at the SORA proceeding. Defendant did not, however, testify at the hearing, nor did he offer any evidence rebutting the dangerous instrument allegations. Without requiring the People to offer foundation evidence, Supreme Court relied on the documents, along with the indictment charging defendant with a weapon possession offense, to sustain the assessment of 30 points. This brought defendant within the moderate risk category (75 to 105 points) and the court therefore adjudicated defendant a level two offender. Absent the assessment of 30 points, defendant would have fallen within the presumptive level one, low risk category.

A divided Appellate Division affirmed the level two designation, concurring with Supreme Court that the internal documents of the District Attorney's office constituted reliable hearsay admissible at a SORA proceeding (49 AD3d 148 [2008]).

---

**2.** A risk assessment instrument is prepared by the District Attorney or the Board of Examiners of Sex Offenders to assist the court in its classification of the risk defendant poses to the community. The RAI contains a series of factors that permit the assignment of specified point values depending on the characteristics of the victim, the circumstances surrounding the crime, a defendant's prior history of sexual offenses, and the like. Point totals under the RAI presumptively place a person convicted of a qualifying sex offense in one of three categories—level one, low risk of reoffense (1 to 70 points); level two, moderate risk of reoffense (75 to 105 points); and level three, high risk of reoffense (110 to 300 points). There are also override factors that warrant a level three designation no matter the point totals. In addition, the level suggested by the RAI is merely presumptive and a SORA court possesses the discretion to impose a lower or higher risk level if it concludes that the factors in the RAI do not result in an appropriate designation.

**3.** Defendant's guilty plea to rape in the first degree—which required an admission that defendant engaged in "forcible compulsion" (*see* Penal Law § 130.35 [1])—did not establish that defendant was armed. Forcible compulsion involves the use of physical force or a threat that places a person in fear of immediate death or physical injury (Penal Law § 130.00 [8]), either of which could have been accomplished without a weapon.

The dissent did not rule out the possibility that the documents could support a point assessment but was troubled by the District Attorney's failure to lay a foundation to support the inference that the victim was the source of the information contained in the documents. Thus, the dissent would have reversed and remitted the case to the SORA court for further proceedings. This Court granted defendant leave to appeal (10 NY3d 929 [2008]) and, like the Appellate Division dissenter, we conclude that a reversal and remittal is warranted.

### People v Dzemil Balic

Dzemil Balic pleaded guilty to sexual abuse in the first degree based on a 2004 incident in which he forcibly fondled the breasts and buttocks of a woman who attended classes in a building where he worked as a custodian. In the RAI prepared for the SORA proceeding, the District Attorney assessed defendant 40 points under the prior convictions section as a result of a 1985 misdemeanor assault conviction that occurred when defendant was 19 years old. The People imposed 10 points for factor 8 since defendant's age at the time of that offense was 20 years or less and 30 points for factor 9 because they viewed the 1985 crime as a prior "sex crime." Absent the inclusion of these points, defendant's point assessment would have resulted in presumptive level one, the low risk category.

Since the elements of misdemeanor assault do not require conduct of a sexual nature (see Penal Law § 120.00 [1]), at the SORA hearing the District Attorney relied on the criminal complaint filed in connection with the prior 1985 prosecution, which had culminated in defendant entering a guilty plea. The criminal complaint was signed under oath by a police officer who stated that, on the day of the crime, the victim—a 14-year-old girl identified by name—told the officer that defendant had forcibly fondled her, attempted to remove her clothes, and threatened that he would shoot her unless she did as he said. The People had attempted to locate other information regarding the 1985 assault, twice obtaining an adjournment to search for additional evidence, but discovered that all other relevant documents had been destroyed by fire or flood.

Defense counsel objected to the assessment of 40 points, arguing that the references to "sexual misconduct" and "[s]ex crime" in factors 8 and 9 required that defendant have a prior conviction of one of the sex offenses enumerated in SORA and misdemeanor assault did not qualify. In the alternative, defen-

dant asserted that the criminal complaint was insufficient proof that the assault involved acts of a sexual nature. Supreme Court rejected both arguments, adjudicating defendant a level two offender. The court noted that, even if it credited defendant's argument that the provisions relied on in the criminal history section of the RAI required a prior sex offense conviction and the point values therefore rendered defendant a presumptive level one risk, an upward departure to level two would be appropriate given the sexual nature of the 1985 attack.

On defendant's appeal, the People conceded that it had been improper to assess 40 points for defendant's 1985 misdemeanor assault offense, acknowledging that the SORA Guidelines indicate points should be assessed under the factors relied on only when a defendant has been convicted of a prior sex offense or endangering the welfare of a child. Defendant should instead have received only five points under factor 9 for having prior criminal convictions that were neither sex crimes nor felonies. Even though the disallowance of 35 points brought defendant within the presumptive level one range under the RAI, the District Attorney maintained that the level two designation should be affirmed because an upward modification was appropriate given the nature of the conduct underlying defendant's 1985 conviction. The Appellate Division agreed with the District Attorney, reasoning that the RAI did not take into account defendant's prior violent sexual attack on a child (52 AD3d 201 [2008]), and we now affirm.

### SORA Risk Level Determinations

SORA requires individuals convicted of sex offenses to register with law enforcement officials and authorizes the dissemination of certain information about those individuals to vulnerable populations and the public. The length of time that an offender must register may turn on the crime for which the offender was convicted or the offender's previous criminal history. For example, since 2002, SORA has compelled a defendant convicted of a "sexually violent offense" to register at least annually for life (Correction Law § 168-h [2]; see Correction Law § 168-a [3] [a]; [7] [b]; L 2002, ch 11, § 13).[4] The same is true of a predicate sex offender—a person who is convicted of a sex

---

4. In *Mingo*, defendant pleaded guilty to rape in the first degree under Penal Law § 130.35. The defendant in *Balic* was convicted of sexual abuse in the first degree under Penal Law § 130.65. Both of these crimes are "sexually violent offenses" under SORA (Correction Law § 168-a [3], [7] [b]). It appears

offense or sexually violent offense after having previously been convicted of such an offense (Correction Law § 168-a [7] [c]; § 168-h [2]). But for others, the registration period depends on the risk level designation that is assigned at the SORA proceeding—level one, evidencing a low risk of reoffense, level two, a moderate risk, and level three, a high risk. Individuals determined to have the lowest risk of reoffense—level one offenders—are relieved of the duty to register after 20 years while level two and three offenders must register at least once each year for life (Correction Law § 168-h).[5]

SORA also contains community notification and disclosure provisions that vary depending on risk level designation. As a result of the 2006 amendments to SORA, law enforcement agencies can disseminate information relating to level one offenders to vulnerable populations and the public—just as they are authorized to do with level two and three offenders, except that the statute authorizes release of exact addresses only for level three offenders (*see* Correction Law § 168-*l* [6]). The public can obtain information about level one offenders by calling a toll-free telephone number maintained by the Division of Criminal Justice Services (Correction Law § 168-p [1]); information relating to level two and three offenders is also publically available on an Internet directory (*see* Correction Law § 168-q [1]).

A defendant's risk level is adjudicated at a SORA hearing, which is civil in nature (*see People v Windham*, 10 NY3d 801 [2008]; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745, 752 [2007]). Correction Law § 168-n (3) directs that "[t]he State shall appear by the district attorney . . . who shall bear the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (*see also* Correction Law § 168-d [3]). In determining the appropriate risk level, "the court shall review any victim's statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations" (Correction Law

from the briefs that, by virtue of a federal lawsuit, Mingo's commission of a sexually violent offense may not automatically render him subject to lifetime registration (*see generally Doe v Pataki*, 481 F3d 69 [2d Cir 2007]).

5. Level two offenders who are not sexually violent offenders, sexual predators or predicate sex offenders can apply to be relieved of the duty to register after 30 years (Correction Law § 168-h [2]).

§ 168-n [3]; *see also* Correction Law § 168-d [3]). The Board of Examiners of Sex Offenders has explained that the information used to determine defendant's risk level "can be derived from the sex offender's admissions; the victim's statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or from any other reliable source" (Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, General Principles ¶ 7, at 5 [2006]). Beyond this, neither the Legislature nor the Board of Examiners of Sex Offenders have further specified the types of evidentiary materials admissible in a SORA proceeding. But one thing is undisputed—the Legislature did not limit the proof to what would be admissible at a civil or criminal trial.

Defendants suggest that this Court apply the standards developed in other administrative and preliminary hearing contexts to fashion an admissibility standard, such as the multi-factored analysis employed in federal disability benefits cases (*see e.g. Richardson v Perales*, 402 US 389 [1971]) or the *Aguilar-Spinelli* test used by New York courts to assess whether there was probable cause for a search or arrest (*see People v Hetrick*, 80 NY2d 344 [1992]). While the approaches taken in these other spheres are certainly helpful in identifying factors relevant to our analysis, SORA proceedings further an important and unique public safety function and we therefore decline to adopt wholesale a body of evidentiary rules developed in another context.

### Reliable Hearsay

To determine a standard of admissibility for risk level determination hearings, we begin by reviewing the evidence New York courts have consistently deemed reliable in SORA proceedings. The Appellate Divisions have routinely upheld determinations based on information found in case summaries prepared by the Board of Examiners of Sex Offenders and presentence reports prepared by a probation department for use by sentencing courts (*see e.g. People v Lewis*, 45 AD3d 1381 [4th Dept 2007], *lv denied* 10 NY3d 703 [2008]; *People v Craig*, 45 AD3d 1365 [4th Dept 2007], *lv denied* 10 NY3d 702 [2008]; *People v Ahlers*, 10 AD3d 770 [3d Dept 2004], *lv denied* 4 NY3d 704 [2005]; *People v Burgess*, 6 AD3d 686 [2d Dept 2004], *lv denied* 3 NY3d 604 [2004]; *People v Dorato*, 291 AD2d 580 [3d Dept 2002]). The Board of Examiners of Sex Offenders is charged

with producing accurate case summaries as an integral part of its functions and it has expertise culling through records to produce a concise statement of the factual information relevant to defendant's risk of reoffense. Similarly, to assist the court in imposing an appropriate sentence, probation departments are charged with gathering a wide variety of information for inclusion in presentence reports—reports that "may well be the single most important document at both the sentencing and correctional levels of the criminal process" (*People v Hicks*, 98 NY2d 185, 189 [2002] [internal quotation marks and citations omitted]).

██ Case summaries and presentence reports are prepared with the knowledge that they will be relied on by courts. No foundation is necessary for their consideration at SORA hearings because such documents are created under statutory mandates and their origins and function are well-known to SORA courts (*see e.g. People v Fiene*, 56 AD3d 921 [3d Dept 2008] [no testimony was required to explain the uses of the RAI, the presentence investigation report or the case summary]). Of course, information found in a case summary or presentence report need not always be credited—it may be rejected when it is unduly speculative or its accuracy is undermined by other more compelling evidence. But case summaries and presentence reports certainly meet the "reliable hearsay" standard for admissibility at SORA proceedings.

██ Similarly, grand jury testimony has been deemed sufficiently trustworthy for SORA purposes (*see e.g. People v Imbert*, 48 AD3d 297 [1st Dept 2008], *lv denied* 10 NY3d 714 [2008]; *People v Concepcion*, 38 AD3d 739 [2d Dept 2007], *lv denied* 9 NY3d 801 [2007]; *People v Dort*, 18 AD3d 23 [3d Dept 2005], *lv denied* 4 NY3d 885 [2005]). Although not subject to cross-examination, this evidence is taken under oath, a significant, though not indispensable, indication of reliability. Other sworn documents have also been consistently accepted by SORA courts, including misdemeanor and felony complaints (*see People v Moore*, 16 AD3d 190 [1st Dept 2005], *lv denied* 4 NY3d 889 [2005]; *People v Conway*, 47 AD3d 492 [1st Dept 2008], *lv denied* 10 NY3d 708 [2008]). Similar to case summaries and presentence reports, no foundation is necessary to justify receipt of this type of evidence at a SORA hearing because the circumstances surrounding the development of the proof are evident from the face of the document and are well understood by a SORA court.

■ With this in mind, we turn to the purpose underlying SORA—to protect the public from sex offenders. Given the significance of the mission, an accurate determination of the risk a sex offender poses to the public is the paramount concern. We conclude that hearsay is reliable for SORA purposes—and, therefore, admissible—if, based on the circumstances surrounding the development of the proof, a reasonable person would deem it trustworthy.

It is impossible to list the types of evidence that will meet this standard because the proof will vary depending on the circumstances of the case. If the District Attorney is relying on facts relating to a prior conviction that involved a trial, the sources relied on at the SORA proceeding will likely be different than would be the case if a defendant had waived indictment and pleaded guilty. A higher quality of proof may be expected where the proof relates to a criminal case that was recently adjudicated versus one that was resolved decades ago. Among the factors considered in evaluating the reliability of proffered hearsay evidence are the age of the conviction and the efforts made to locate relevant documents; whether the proof is corroborated either by the nature of the conviction or other evidence in the record; whether the declarant was under oath or was acting under a duty to accurately report, record or convey information; and whether the circumstances surrounding the making of the statement otherwise bear indicia of reliability. SORA courts must have the flexibility to make reliability determinations on a case-by-case basis.

Since accuracy is the goal, the District Attorney should proffer the best evidence available to illuminate the relevant facts, with the caveat that the Legislature did not contemplate that victims of sex crimes be compelled to appear and testify under oath at SORA proceedings. As the New Jersey Supreme Court has observed, such a requirement would undermine the practice often utilized by prosecutors of entering guilty pleas in cases involving sex crimes to avoid putting the victim through the trauma of a criminal trial (*see Matter of C.A.*, 146 NJ 71, 97-98, 679 A2d 1153, 1166 [1996]).

### *Mingo*: The District Attorney's Office Documents

■ Applying this standard to the internal District Attorney's office documents in *Mingo*, the evidence used to establish that defendant was armed with a dangerous instrument at the time of the rape may have constituted "reliable hearsay" but the

record is presently insufficient to determine that this is the case. It appears that the District Attorney's inability to locate other types of proof, such as grand jury testimony, stemmed from the fact that the offense was committed almost 20 years ago. Defendant did not argue at the SORA proceeding that the District Attorney failed to undertake a diligent search for additional records or was not proffering the best available evidence.

As the People argue, internal documents generated by a prosecuting agency share similarities with case summaries and presentence reports in that all are prepared in furtherance of a governmental function. The District Attorney's office documents may be reliable for reasons similar to the business records exception to the hearsay rule, that is "records systematically made for the conduct of a business . . . are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant's obligation is to have them truthful and accurate for purposes of the conduct of the enterprise" (*People v Rawlins*, 10 NY3d 136, 150 [2008] [internal quotation marks and citations omitted]; *see People v Cratsley*, 86 NY2d 81, 88-91 [1995]). It may well be that these forms are generally produced based on information supplied by the victim, the arresting officer or some other knowledgeable witness under circumstances bearing indicia of reliability.

But the documents relied on here differ in at least one significant respect from case summaries and presentence reports. Since SORA courts are aware of how case summaries and presentence reports are prepared and, in fact, these documents are generated with knowledge that they will be submitted to and relied on by courts, foundation testimony is unnecessary to establish their admissibility. But the same is not true with respect to the unsworn, internal District Attorney's office documents proffered in *Mingo*. Some explanation of how these documents were generated, the personnel who prepared them, the sources typically relied upon for the information contained therein, and the function they served is needed before they can be viewed as trustworthy. Furthermore, where the documents contain a code or shorthand not readily interpreted by the court, this should be deciphered on the record to assist the court and facilitate appellate review. For example, in a brief submitted in this Court, the District Attorney explains some of the notations appearing on the Early Case Assessment Bureau form, indicating that they reveal the sources of the information contained on the form. This type of basic information should be presented at the

SORA proceeding, either through a prehearing affirmation, an offer of proof, or by testimony from a witness with knowledge of the internal procedures of the District Attorney's office.

We do not suggest that any formal incantation, such as the recitation typically preceding the admission of a business record under CPLR 4518, is required. Nor will it be necessary in every case for the District Attorney to call a witness to supply the requisite foundation. But, in *Mingo*, since the SORA court accepted the forms used by the District Attorney's office without requiring foundation evidence of any type, the record contains no information supplying the requisite indicia of reliability. Hence, this case should be remitted to the SORA court to provide the District Attorney an opportunity to establish a foundation supporting the documents' admissibility. Defendant remains free to rebut the District Attorney's proffer and the SORA court will determine whether the documents are sufficiently trustworthy to constitute "reliable hearsay" based on the considerations identified above.

### *Balic*: The Criminal Complaint

▐ Remittal is unnecessary in *Balic* since the criminal complaint was a sworn statement created by a police officer with a duty to report. Here, the record supports the conclusion that the document constituted reliable hearsay. The source of the information in the complaint is clear; the police officer indicates that he is recounting statements made by the child victim on the same day as the crime. Needless to say, a police officer is charged with the duty to accurately record statements made by a complaining witness—and nothing in this record suggests that the officer did not fulfill this command.

Defendant argues that the document is unreliable because, although the police officer was under oath, the complainant was not. Thus, defendant suggests that SORA courts can consider only sworn victim statements. We find this assertion to be inconsistent with the broad statutory language directing the court to consider "*any* victim's statement" (Correction Law § 168-n [3] [emphasis added]). The Legislature's decision not to restrict the proof to sworn statements recognizes that there are circumstances when a sworn statement of the victim is unavailable either due to the victim's age or mental capacity, or the early resolution of the case by a waiver of indictment and guilty plea. Moreover, as these appeals demonstrate, sometimes sworn statements cannot be located due to the age of the conviction and

the unintentional loss or destruction of documents. Courts in other jurisdictions with comparable regulatory schemes have similarly determined that victim statements can be relied on even if not made under oath (*see Matter of C.A., supra*, 146 NJ 71, 679 A2d 1153 [1996] [victim statements recounted in police and medical reports constituted reliable hearsay]; *Doe v Sex Offender Registry Bd.*, 70 Mass App Ct 309, 873 NE2d 1194 [App Ct, Suffolk 2007], *review denied* 450 Mass 1110, 881 NE2d 1142 [2008] [court did not err in relying on victim statement recounted in police report]). Of course, where an unsworn statement is equivocal, inconsistent with other evidence, or seems dubious in light of other information in the record, a SORA court is free to disregard it.

But, in *Balic*, there is no basis to set aside the determination that the criminal complaint was sufficiently reliable to render it admissible at the risk level proceeding. Moreover, we reject defendant's assertion that the District Attorney failed to meet the clear and convincing evidence burden of proof, particularly since defendant did not actually controvert the allegations of sexual assault by offering a contrary account of the 1985 incident and defendant's guilty plea confirmed that defendant physically assaulted the victim, partially corroborating the information in the criminal complaint. We therefore decline to disturb Balic's level two designation.

Accordingly, in *People v Mingo*, the order of the Appellate Division should be reversed, without costs, and the case remitted to Supreme Court for proceedings not inconsistent with this opinion; in *People v Balic*, the order of the Appellate Division should be affirmed, without costs.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

In *People v Mingo*: Order reversed, without costs, and case remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein.

In *People v Balic*: Order affirmed, without costs.