*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  August 7, 2014                    517891
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

            v                                    MEMORANDUM AND ORDER

VINCENT S. IZZO,
                    Appellant.
_____

Calendar Date:  June 3, 2014

Before:  Peters, P.J., Garry, Rose, Egan Jr. and Clark, JJ.

_____

        Adam Bevelacqua, New York City, for appellant.

        Weeden A. Wetmore, District Attorney, Elmira (Damian
Sonsire of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from an order of the County Court of Chemung County
(Hayden, J.), entered August 7, 2013, which classified defendant
as a risk level II sex offender pursuant to the Sex Offender
Registration Act.

        Defendant was charged in a 10-count indictment with, among
other things, various sex crimes stemming from his contact with
three underage girls.  After two counts of the indictment were
dismissed due to a typographical error, defendant pleaded guilty
to criminal sexual act in the second degree (two counts),
unlawful imprisonment in the second degree (two counts), sexual
abuse in the third degree (two counts), endangering the welfare
of a child and aggravated harassment in the second degree.
Pursuant to the terms of the underlying plea agreement, defendant

was placed on interim probation for a period of one year. Defendant thereafter admitted to violating the terms of his interim probation by being discharged from a sex offender treatment program, purchasing a computer and sending numerous emails – some of which contained explicit sexual content – to a 17-year-old girl. After two additional counts of the indictment were dismissed as duplicitous, defendant was sentenced to an aggregate prison term of two years followed by three years of postrelease supervision.

In anticipation of defendant's release from prison, the Board of Examiners of Sex Offenders completed a risk assessment instrument that presumptively classified defendant as a risk level II sex offender (105 points) in accordance with the Sex Offenders Registration Act (see Correction Law art 6-C [hereinafter SORA]).[1] The parties agreed to forgo a hearing, and County Court decided the matter upon written submissions and classified defendant as a risk level II sex offender. Defendant now appeals, contending that he was improperly assessed points under risk factors 3 (number of victims) and 7 (relationship between offender and victim) and asserting that a downward departure from the presumptive risk level classification is warranted.

We affirm. Our review of the record – specifically, defendant's plea allocution and the relevant grand jury testimony – discloses sufficient factual detail to establish, by clear and

---

[1] In reaching this conclusion, the Board noted that it "conservatively scored" defendant as to those risk factors encompassing course of sexual misconduct (risk factor 4), substance abuse (risk factor 11), acceptance of responsibility (risk factor 12) and conduct while confined/supervised (risk factor 13) and expressed concern regarding defendant's violation of his interim probation and corresponding "inability to control himself sexually while supervised." To that end, the Board recommended that, if the evidence presented by the People failed to establish that an assessment of points in the cited categories was warranted, County Court consider an upward departure to a risk level III classification.

convincing evidence (see Correction Law § 168-n [3]), that defendant indeed touched himself in a sexual manner while in contact with one of his victims via a webcam.  We therefore conclude that the assessment of 30 points under risk factor 3 for three or more victims was entirely appropriate.

We reach a similar conclusion with respect to the assessment of 20 points under risk factor 7 (relationship between offender and victim).  While it is true that the online contact between defendant and his victims precludes a finding that the victims were "strangers" for purposes of SORA (cf. People v Birch, 114 AD3d 1117, 1118 [2014]), we nonetheless are persuaded that there is clear and convincing evidence to support County Court's finding that defendant engaged in "grooming" behavior by cultivating a relationship with each of his victims for the purpose of satisfying his sexual desires.  Accordingly, to our analysis, no point-based reduction in defendant's risk level classification under SORA is warranted.

As for defendant's assertion that he demonstrated his entitlement to a downward departure from the presumptive risk level classification pursuant to what he has denominated as the "statutory rape exception" under risk factor 2 (see People v Weatherly, 41 AD3d 1238, 1238-1239 [2007]), the record indeed reflects that County Court — despite authoring what otherwise was a detailed written decision in this matter — did not expressly reference defendant's request in this regard.  That said, County Court did expressly reference each of the factors relied upon by defendant — the age difference between defendant and his victims, the lack of forcible compulsion, defendant's prior criminal history and his acceptance of responsibility and/or participation in therapy — elsewhere in its written decision and thoroughly discussed the conduct forming the basis for defendant's violation of probation.  Accordingly, we are satisfied that County Court's findings provide an adequate basis for intelligent appellate review and, further, that defendant failed to establish, by a preponderance of the evidence (see People v Gillotti, ___ NY3d

___, ___, 2014 NY Slip Op 04117, *13-14 [2014]),[2] that a downward departure from the presumptive risk level classification was warranted. Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, P.J. and Clark, J., concur.


Garry, J. (dissenting).

We respectfully dissent, finding merit in defendant's arguments that the record lacks clear and convincing evidence that he had three or more victims, relative to risk factor 3, and that he established relationships with the victims for the primary purpose of victimizing them, relative to risk factor 7. Further, in light of the lifelong severe consequences that necessarily result from a risk level II classification, the matter should be remitted for a full and express analysis and determination relative to defendant's request for a downward departure; this weighty decision should not be upheld upon mere implication or inference.

The People must establish the risk level classification by clear and convincing evidence. Reliable hearsay, including grand jury minutes, the presentence investigation report, a victim statement and the case summary, may be used to meet this burden (see People v Mingo, 12 NY3d 563, 571-574 [2009]; People v Belile, 108 AD3d 890, 890 [2013], lv denied 22 NY3d 853 [2013]). As relevant here, the risk assessment guidelines provide that a defendant should be assessed 20 points for risk factor 3 if there were two victims, or 30 points for three or more victims (see Sex

_____

[2]   To the extent that our prior decisions have held that a defendant's request for a downward departure from the presumptive risk level classification must be based upon clear and convincing evidence (see e.g. People v Mercado, 117 AD3d 1367, 1368 [2014]; People v Carter, 106 AD3d 1202, 1204 [2013]), those decisions should not be followed in light of the Court of Appeals' recent pronouncement in Gillotti.

Offender Registration Act: Risk Assessment Guidelines and Commentary at 10 [2006]).  Here, the record lacks clear and convincing proof of prohibited sexual conduct with the third victim referenced in the indictment – as to whom defendant pleaded guilty to endangering the welfare of a child and aggravated harassment in the second degree.  During the plea allocution, defendant admitted that he had engaged in conversations of a sexual nature with this victim, and the victim testified before the grand jury that defendant had contacted her by webcam video, during which time he touched himself in the area of his genitals, over his clothing.  There was no physical sexual contact between the two at any time.  As defendant argues, the grand jury testimony included too little factual detail to constitute clear and convincing evidence that he was masturbating.  Although this might be inferred, it was not clearly revealed; viewed objectively, the testimony demonstrates nothing more than a brief swipe of defendant's hand in his genital region, accompanied by innuendo.  Our precedent establishes a significantly higher standard of misconduct (compare People v Clavette, 96 AD3d 1178, 1179-1180 [2012], lv denied 20 NY3d 851 [2012]; People v Ramirez, 53 AD3d 990, 990 [2008], lv denied 11 NY3d 710 [2008]).  Therefore, we would reduce this assessment by 10 points.

We further find that the record supports defendant's contention that he was improperly assessed 20 points under risk factor 7 because his conduct was not "directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]).  The majority accepts County Court's finding that defendant and the victims were not "strangers," but that defendant had engaged in "grooming" behavior; we disagree.  An example of grooming behavior provided in the guidelines is that of a scout leader who chose the position in order to gain access to his victims (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]).  As defendant argues, the record does not establish this type of calculated behavior on his part, nor was there a showing of emotional manipulation, undue influence or other customary indicia of grooming conduct.  Instead, the record is replete with evidence –

including three expert evaluations – establishing that defendant is significantly lacking in sexual and social maturity, has difficulty in understanding and interpreting social cues, functions socially at the level of a young teenager of roughly the same age as his victims, and would be unable to maintain appropriate relationships with young women of his chronological age. Without condoning defendant's conduct, as he was fully aware that the girls were significantly younger than he and deliberately chose to ignore this fact, we do not find clear and convincing evidence that he purposefully "groomed" the victims for the sole purpose of victimizing them (see People v Pelaez, 112 AD3d 684, 684-685 [2013]; compare People v Tejada, 51 AD3d 472, 472 [2008]; see also Rebecca Williams, Ian Elliot & Anthony Beech, Identifying Sexual Grooming Themes Used by Internet Sex Offenders, 34 Deviant Behavior 2, 135-152 [2013]). Therefore, we would reduce defendant's assessment by 20 points in this category.

As thus reduced, the 75 assessed points would place defendant squarely at the cusp of a risk level II sex offender. For this reason and those stated above, his request for a downward departure from the presumptive risk level merits a most close and careful review. Courts have the discretion to depart from the presumptive risk level where there is "an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4). A three-step analysis is required: first, evaluating, as a matter of law, whether such circumstances are shown, second, determining whether the proponent has met his or her burden of proof and, third, exercising discretion "by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and risk of sexual recidivism" (People v Gillotti, ___ NY3d ___, ___, 2014 NY Slip Op 04117, *12 [2014]). As the majority notes, it has recently been determined that defendant's burden of proof in seeking a downward departure is preponderance of the evidence, rather than the higher standard of clear and convincing evidence (id. at *13-*14).

        This record lacks any express determination by County Court of defendant's contention that he established the existence of mitigating circumstances calling for a downward departure. Although the majority accepts an implied finding basing the determination primarily upon defendant's probation violation, the statute requires findings of fact and conclusions of law to be expressly rendered (see Correction Law § 168-n [3]).  In light of this requirement, it is necessary to remit for further review and determination of this issue (see People v Filkins, 107 AD3d 1069, 1070 [2013]; People v Burke, 68 AD3d 1175, 1177 [2009]).  This is particularly true upon the record presented here; as stated above, there is significant evidence that, at the time of the underlying offenses, defendant was not functioning at the level ordinarily expected for his age.  This Court has not yet applied the "statutory rape exception" that has been well established in the Fourth Department in cases where there is no great disparity between the ages of the offender and the victim(s), and there are other indicia of willing, albeit legally prohibited, sexual conduct (see e.g. People v Goossens, 75 AD3d 1171, 1171-1172 [2010]; People v Weatherley, 41 AD3d 1238, 1238-1239 [2007]).  These issues bear examination and review.  In light of the record evidence, we should not lightly dismiss defendant's assertion that the circumstances underlying his crimes fail to provide any compelling evidence of his danger of re-offense and risk to the community.[1]  The majority accepts County Court's implied finding that defendant's violation of the terms of his initial probation may reveal a compulsive and dangerous condition; however, in evaluating the sexual conduct of adolescents and young adults, we must exercise the greatest level of care and scrutiny, making a full effort to avoid imposing grave permanent consequences for sexual misconduct when the risk of long-term recidivism is not clearly shown.  For these reasons, we would reverse and remit for further proceedings.

        Rose, J., concurs.

_____

        [1]  Notably, the victim involved in the probation violation was 17 years old, and defendant met her in a college setting.

ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court