Garry, J.
(dissenting). We respectfully dissent, finding merit in defendant’s arguments that the record lacks clear and convincing evidence that he had three or more victims, relative to risk factor 3, and that he established relationships with the victims for the primary purpose of victimizing them, relative to risk factor 7. Further, in light of the lifelong severe consequences that necessarily result from a risk level II classification, the matter should be remitted for a full and express analysis and determination relative to defendant’s request for a downward departure; this weighty decision should not be upheld upon mere implication or inference.
The People must establish the risk level classification by clear and convincing evidence. Reliable hearsay, including grand jury minutes, the presentence investigation report, a victim statement and the case summary, may be used to meet this burden (see People v Mingo, 12 NY3d 563, 571-574 [2009]; People v Belile, 108 AD3d 890, 890 [2013], lv denied 22 NY3d 853 [2013]). As relevant here, the risk assessment guidelines provide that a defendant should be assessed 20 points for risk factor 3 if there were two victims, or 30 points for three or more victims (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 10 [2006]). Here, the record lacks clear and convincing proof of prohibited sexual conduct with the third victim referenced in the indictment — as to whom defendant pleaded guilty to endangering the welfare of a child and aggravated harassment in the second degree. During the plea allocution, defendant admitted that he had engaged in conversations of a sexual nature with this victim, and the victim testified before the grand jury that defendant had contacted her by webcam video, during which time he touched himself in the area of his genitals, over his clothing. There was no physical sexual contact between the two at any time. As defendant argues, the grand jury testimony included too little factual detail to constitute clear and convincing evidence that he was masturbating. Although this might be inferred, it was not clearly revealed; viewed objectively, the testimony demonstrates *864 nothing more than a brief swipe of defendant’s hand in his genital region, accompanied by innuendo. Our precedent establishes a significantly higher standard of misconduct (compare People v Clavette, 96 AD3d 1178, 1179-1180 [2012], lv denied 20 NY3d 851 [2012]; People v Ramirez, 53 AD3d 990, 990 [2008], lv denied 11 NY3d 710 [2008]). Therefore, we would reduce this assessment by 10 points.
We further find that the record supports defendant’s contention that he was improperly assessed 20 points under risk factor 7 because his conduct was not “directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]). The majority accepts County Court’s finding that defendant and the victims were not “strangers,” but that defendant had engaged in “grooming” behavior; we disagree. An example of grooming behavior provided in the guidelines is that of a scout leader who chose the position in order to gain access to his victims (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]). As defendant argues, the record does not establish this type of calculated behavior on his part, nor was there a showing of emotional manipulation, undue influence or other customary indicia of grooming conduct. Instead, the record is replete with evidence — including three expert evaluations — establishing that defendant is significantly lacking in sexual and social maturity, has difficulty in understanding and interpreting social cues, functions socially at the level of a young teenager of roughly the same age as his victims, and would be unable to maintain appropriate relationships with young women of his chronological age. Without condoning defendant’s conduct, as he was fully aware that the girls were significantly younger than he and deliberately chose to ignore this fact, we do not find clear and convincing evidence that he purposefully “groomed” the victims for the sole purpose of victimizing them (see People v Pelaez, 112 AD3d 684, 684-685 [2013]; compare People v Tejada, 51 AD3d 472, 472 [2008]; see also Rebecca Williams, Ian A. Elliot & Anthony R. Beech, Identifying Sexual Grooming Themes Used by Internet Sex Offenders, 34 Deviant Behavior 2, 135-152 [2013]). Therefore, we would reduce defendant’s assessment by 20 points in this category.
As thus reduced, the 75 assessed points would place defendant squarely at the cusp of a risk level II sex offender. For this reason and those stated above, his request for a downward *865 departure from the presumptive risk level merits a most close and careful review. Courts have the discretion to depart from the presumptive risk level where there is “an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]). A three-step analysis is required: first, evaluating, as a matter of law, whether such circumstances are shown, second, determining whether the proponent has met his or her burden of proof and, third, exercising discretion “by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant’s dangerousness and risk of sexual recidivism” (People v Gillotti, 23 NY3d 841, 861 [2014]). As the majority notes, it has recently been determined that defendant’s burden of proof in seeking a downward departure is preponderance of the evidence, rather than the higher standard of clear and convincing evidence (id. at *13-14).
This record lacks any express determination by County Court of defendant’s contention that he established the existence of mitigating circumstances calling for a downward departure. Although the majority accepts an implied finding basing the determination primarily upon defendant’s probation violation, the statute requires findings of fact and conclusions of law to be expressly rendered (see Correction Law § 168-n [3]). In light of this requirement, it is necessary to remit for further review and determination of this issue (see People v Filkins, 107 AD3d 1069, 1070 [2013]; People v Burke, 68 AD3d 1175, 1177 [2009]). This is particularly true upon the record presented here; as stated above, there is significant evidence that, at the time of the underlying offenses, defendant was not functioning at the level ordinarily expected for his age. This Court has not yet applied the “statutory rape exception” that has been well established in the Fourth Department in cases where there is no great disparity between the ages of the offender and the victim(s), and there are other indicia of willing, albeit legally prohibited, sexual conduct (see e.g. People v Goossens, 75 AD3d 1171, 1171-1172 [2010]; People v Weatherley, 41 AD3d 1238, 1238-1239 [2007]). These issues bear examination and review. In light of the record evidence, we should not lightly dismiss defendant’s assertion that the circumstances underlying his crimes fail to provide any compelling evidence of his danger of re-offense and risk to the *866 community.* The majority accepts County Court’s implied finding that defendant’s violation of the terms of his initial probation may reveal a compulsive and dangerous condition; however, in evaluating the sexual conduct of adolescents and young adults, we must exercise the greatest level of care and scrutiny, making a full effort to avoid imposing grave permanent consequences for sexual misconduct when the risk of long-term recidivism is not clearly shown. For these reasons, we would reverse and remit for further proceedings.
Rose, J., concurs.
Ordered that the order is affirmed, without costs.

 Notably, the victim involved in the probation violation was 17 years old, and defendant met her in a college setting.