People v Thomas (2024 NY Slip Op 02243)

People v Thomas

2024 NY Slip Op 02243

Decided on April 25, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 25, 2024

CV-23-1315
[*1]The People of the State of New York, Respondent,
v
Anthony Thomas, Appellant.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.

Powers, J.
Appeal from an order of the County Court of Albany County (William T. Little, J.), entered August 8, 2023, which classified defendant as a risk level two sex offender pursuant to the Sex Offender Registration Act.
In 2020, defendant pleaded guilty to sexual abuse in the first degree and was sentenced to a three-year prison term to be followed by 10 years of postrelease supervision. The conviction stems from defendant's conduct in March 2020 on a city street near a bus stop in subjecting the victim, who was waiting for a bus, to sexual contact by forcible compulsion. According to the victim's account, defendant grabbed her buttocks with his hand as he walked by and, when the victim called him out for grabbing her, he turned around, exposing his penis while masturbating, approached the victim up close and attempted to pull her to a dark area behind the bus stop, all the while commanding her to perform a sex act. The victim managed to get away, assisted by a passing motorist.
In anticipation of his release from prison, the Board of Examiners of Sex Offenders and the People prepared identical risk assessment instruments (hereinafter RAI) in accordance with the Sex Offender Registration Act (see Correction Law art 6-C [hereinafter SORA]) that assigned a total of 85 points, presumptively classifying defendant as a risk level two sex offender. At the SORA hearing, defendant unsuccessfully challenged the assessment of 20 points under risk factor 7, which were added based upon defendant's victimization of a stranger. County Court agreed with the People and the Board's position, assigning 85 points including 20 points for risk factor 7, and classified defendant as a sexually violent, risk level two sex offender. Defendant appeals.
Defendant's sole contention is that County Court erred in assigning 20 points under risk factor 7, on the premise that the People failed to establish that he and the victim were strangers. Under SORA, the People "bear the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]; see People v Mingo, 12 NY3d 563, 571 [2009]), which requires proof that the facts on which the People rely are "highly probable" (People v Stewart, 61 AD3d 1059, 1060 [3d Dept 2009] [internal quotation marks and citations omitted]; accord Currie v McTague, 83 AD3d 1184, 1185 [3d Dept 2011]). Under risk factor 7, 20 points may be assessed where, as relevant here, "the offender's crime . . . was directed at a stranger" (Sex Offender Registration Act Risk Assessment Guidelines and Commentary at 12 [2006]). The risk assessment guidelines provide that "the term 'stranger' includes anyone who is not an actual acquaintance of the victim" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]). The "concern with sex offenders who direct their crimes at strangers is . . . [that they] pose a special danger to the community . . . , [warranting] 'a heightened concern [*2]for public safety and need for community notification' " (People v Johnson, 11 NY3d 416, 419 [2008], quoting Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 12 [2006]). "In assessing points, evidence may be derived from the defendant's admissions, the victim's statements, evaluative reports completed by the supervising probation officer, parole officer, or corrections counselor, case summaries prepared by the Board . . . or any other reliable source, including reliable hearsay" (People v Beazer, 181 AD3d 729, 729 [2d Dept 2020] [internal quotation marks and citations omitted]; see Correction Law §§ 168-d [3]; 168-n [3]).
The victim's statement to police regarding the crime described a street encounter late at night while she was waiting for a bus, "strongly suggest[ing] a random encounter" as County Court appropriately characterized the crime. The victim, who recounted seeing defendant "really close" up, provided a detailed description of defendant's attributes, including his race, skin color, hairstyle and clothing but gave no indication that she had ever seen him, recognized him, knew him or his name or knew anything about him other than his appearance, referring to him as "a male" and "[t]he guy" (see People v Serrano, 61 AD3d 946, 947 [2d Dept 2009], lv denied 13 NY3d 704 [2009]; People v Lewis, 45 AD3d 1381, 1381 [4th Dept 2007], lv denied 10 NY3d 703 [2008]; People v Gaines, 39 AD3d 1212, 1212-1213 [4th Dept 2007], lv denied 9 NY3d 803 [2007]; see also People v Odom, 101 AD3d 1693, 1693 [4th Dept 2012], lv denied 20 NY3d 1094 [2013]; cf. People v McGraw, 24 AD3d 525, 526 [2d Dept 2005]). Contrary to defendant's argument, the victim's account did not compel the inference that she never saw the perpetrator's face and was unable to determine whether she knew him given that, among other factors, she saw him close up and was able to identify his skin color and hairstyle. Likewise, defendant's statement to probation authorities gave no indication that he was acquainted with or had ever previously interacted with the victim in any capacity or knew her name or anything about her (see People v Middlemiss, 153 AD3d 1096, 1097 [3d Dept 2017], lv denied 30 NY3d 906 [2017]; see also People v Coleman, 203 AD3d 851, 852 [2d Dept 2022], lv denied 38 NY3d 910 [2022]; People v Miller, 186 AD3d 1095, 1096 [4th Dept 2020], lv denied 36 NY3d 903 [2020]; People v Tumminia, 112 AD3d 1002, 1003 [3d Dept 2013], lv denied 22 NY3d 864 [2014]).
"The term 'acquaintance' spans a range of social interactions" (People v Helmer, 65 AD3d 68, 69-70 [4th Dept 2009]). Here, however, there was no evidence that the victim had ever even come in contact with or communicated with defendant before this random street crime (see People v Luna, 187 AD3d 805, 806 [2d Dept 2020]; People v Miller, 186 AD3d at 1096; People v LaShomb, 161 AD3d 1465, 1466-1467 [3d Dept 2018]; People v Mitchell, 142 AD3d 542, 543 [2d Dept 2016], lv denied 28 NY3d 909 [2016]; People [*3]v Palacios, 137 AD3d 761, 761-762 [2d Dept 2016]; see also People v Patrick, 219 AD3d 848, 849 [2d Dept 2023], lv denied 40 NY3d 910 [2024]; People v Hernandez, 55 Misc 3d 1221 [A] [Sup Ct, Bronx County 2017], affd 213 AD3d 615 [1st Dept 2023], lv denied 39 NY3d 916 [2023]; compare People v Perez, 165 AD3d 1628, 1628-1629 [4th Dept 2018]; People v Birch, 114 AD3d 1117, 1118 [3d Dept 2014]; People v Helmer, 65 AD3d at 69-70). Given the foregoing, we find that although there was no direct evidence [FN1] regarding the connection between the victim and defendant, the circumstantial evidence was compelling and constituted clear and convincing evidence to support County Court's reasonable inference (see People v Green, 201 AD3d 1137, 1139 [3d Dept 2022], lv denied 38 NY3d 906 [2022]; People v Arnold, 126 AD3d 463, 464 [1st Dept 2015], lv denied 25 NY3d 910 [2015]) that they were strangers within the meaning of the guidelines, and not actual acquaintances (see People v Gillotti, 23 NY3d 841, 861-862 [2014]; cf. People v Graves, 162 AD3d 1659, 1650-1651 [4th Dept 2018], lv denied 32 NY3d 906 [2018]). Accordingly, 20 points were properly assessed under risk factor 7.
Garry, P.J., Egan Jr., Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: While we agree with defendant that the "best evidence" that would illuminate the connection between a defendant and a victim would be a statement or testimony by the victim, a witness or defendant on point, in this case the evidence and reasonable inferences therefrom were nonetheless sufficient to establish this factor (People v Mingo, 12 NY3d at 574).