This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 113
The People &c.,
            Respondent,
        v.
Dennis J. Sincerbeaux,
            Appellant.

Mary P. Davison, for appellant.
Bruce A. Rosekrans, for respondent.

DIFIORE, Chief Judge:

In this Sex Offender Registration Act (SORA) appeal, we are asked to decide whether the SORA court erred in assessing

- 1 -

defendant points under risk factors 1, 5, and 9 and abused its discretion in adjudicating defendant a risk level three sex offender.  We conclude that the court did not err and did not abuse its discretion.

I.

Defendant was convicted on his plea of guilty of incest in the third degree (Penal Law § 255.25) for engaging in sexual intercourse with a person he knew to be related to him over a period of approximately one month in 2007.  He was sentenced to six months' incarceration followed by ten years' probation.

Prior to defendant's release, the Board of Examiners of Sex Offenders prepared a risk assessment instrument (RAI) and assessed defendant 115 points, making him a presumptive risk level three.  The Board recommended that defendant be classified as level three, concluding that a departure from the presumptive risk level was not warranted.  As relevant here, the Board assessed 10 points under risk factor 1 for use of forcible compulsion in the current incest offense, 20 points under risk factor 5 for the age of the victim being less than 16 in the current incest offense, and 30 points under risk factor 9 for a prior endangering the welfare of a child conviction under Penal Law § 260.10.

At the SORA hearing, defendant argued that it would be inappropriate for the court to assess a collective 30 points under risk factors 1 and 5 for forcible compulsion and age of the

victim in the current incest offense.  Defendant argued that
these points were unwarranted because they were based on the
allegations of the victim and were not charged offenses.
Defendant also argued that he should only be assessed 5 points
for his prior endangering the welfare of a child conviction under
risk factor 9, and not 30 points as the Board had recommended,
because it was a misdemeanor that was not sexual in nature.
Defendant argued that if the 25 points he claimed were
overassessed under risk factor 9 were subtracted, defendant would
have received a score of 90 and been designated a level two sex
offender.  Additionally, defendant argued that without those 25
points under risk factor 9 and 30 points under risk factors 1 and
5, he would have received a score of 60 and been classified a
level one offender.

The People "vigorously oppos[ed]" defendant's request
to be adjudicated a level one sex offender.  The People, relying
on the victim's statements, argued that clear and convincing
evidence had been presented to support the assessment of points
for forcible compulsion and age of the victim under risk factors
1 and 5, respectively.  The People further argued that it was
appropriate for the court to consider allegations made by the
victim of uncharged crimes such as these.  As to defendant's
requested point reduction related to the prior endangering the
welfare of a child conviction under risk factor 9, the People
argued that even if the court granted defendant's request, which

would bring his points from 115 to 90 making him a presumptive

risk level two, an upward departure to level three would be

warranted given the victim's allegations of "numerous occasions

of forcible sexual intercourse."

The SORA court agreed with the Board and the People and

assessed defendant a total of 115 points, a presumptive risk

level three.  The court in its written decision made factual

findings related to the risk factors defendant now challenges:

that defendant had a prior endangering the welfare of a child

conviction for an offense that involved an assault on his son and

was not sexual in nature, that the sexual contact between the

victim and defendant involved the use of forcible compulsion, and

that the victim was less than 16 when she was first subjected to

sexual contact with defendant.  The court also found that the

sexual contact between the victim and defendant involved multiple

acts of sexual intercourse, that the sexual contact between the

victim and defendant constituted a continuous course of conduct

that covered a period of many years, and that defendant had not

accepted responsibility for his conduct.[1]  Based on its factual

findings, the court declined to downwardly depart, finding that

---

[1] With regard to defendant's failure to accept
responsibility, the pre-sentence report found that defendant
"presented himself as a victim, demonstrated no remorse and
accepted very little accountability for his actions."  Moreover,
it found that defendant blamed the victim for his own conduct and
denied that his sexual intercourse with the victim fell within
the definition of "incest."

"a departure from the presumptive Risk Level 3 is not appropriate."

The Appellate Division affirmed and found record support for the SORA court to assess defendant points under risk factors 1 and 5 for forcible compulsion and age of the victim in relation to the current incest offense because the People had "presented 'reliable hearsay evidence, in the form of the victim's statement'" (121 AD3d 1577, 1577 [4th Dept 2014] [internal citation omitted]). The Appellate Division further held that the SORA court did not abuse its discretion in assessing defendant 30 points under risk factor 9 for the prior endangering the welfare of a child conviction and classifying him a level three sex offender.

This Court granted defendant leave to appeal (24 NY3d 915 [2015]), and we now affirm.

II.

Correction Law § 168-n (3) requires the People to prove facts to support defendant's SORA risk-level classification by clear and convincing evidence. As relevant here, the SORA Risk Assessment Guidelines and Commentary (Guidelines) make clear that, when assessing points related to the current offense, the court is not limited to considering defendant's current conviction -- here, incest in the third degree. The court may also assess points for clear and convincing evidence of other criminal acts presented in admissions from the offender,

statements from victims, and reports from probation officers, parole officers, corrections counselors, or other reliable sources (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 5 [2006] [hereinafter Guidelines]). Moreover, we have held that sworn statements constitute reliable hearsay evidence admissible in SORA proceedings to determine the defendant's risk level, and that even unsworn statements of the victim are admissible if there is a requisite indicia of reliability (see People v Mingo, 12 NY3d 563, 567, 573, 576-577 [2009]).

In relation to his current offense, the SORA court properly assessed defendant 10 points under risk factor 1 for use of forcible compulsion and 20 points under risk factor 5 for the age of the victim being less than 16. Neither force nor age is an element of defendant's current incest conviction (see Penal Law § 255.25). However, the record contains clear and convincing evidence supporting the assignment of points for both of these risk factors in the form of a sworn statement from the victim. Although victims' statements may be considered even if unsworn, here, the victim's sworn statement complies with the requirements for such statements set forth in Penal Law § 210.45[2] (see People

---

[2] Penal Law § 210.45 provides that "[a] person is guilty of making a punishable false written statement when he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable. Making a punishable false written statement is a class A

v Sullivan, 56 NY2d 378, 380 [1982]).  With respect to forcible

compulsion, in the sworn statement the victim declared that

defendant would take her out of her bedroom and force her to have

sexual intercourse with him.  She averred that when she refused

defendant would "hit" or "throw" her, noting that she had

received black eyes from his blows and had a scar on her right

knee from a time defendant threw her to the ground.  With respect

to her age being less than 16, in the sworn statement the victim

maintained that defendant first started forcing her to have

sexual intercourse with him when she was 13 years old.

Therefore, under the Guidelines and Mingo it was not error for

the SORA court to assess points under risk factor 1 for forcible

compulsion and risk factor 5 for the age of the victim being less

than 16.

In relation to the assessment of points for defendant's

criminal history under risk factor 9, the Guidelines direct the

SORA court to assess defendant 30 points for a prior "violent

felony, a misdemeanor sex crime, or endangering the welfare of a

child" (Guidelines, factor 9).  Additionally, the Guidelines

provide that

> "[t]he Board decided to treat endangering the
> welfare of a child as if it were a sex crime
> because it generally involves sexual
> misconduct, especially when it is part of a
> plea bargained disposition.  Where a review
> of the record indicates that there was no
> such misconduct, *a departure* may be

misdemeanor."

warranted"

(Guidelines at 14 [emphasis added]).  Plainly, pursuant to these

Guidelines the SORA court was required to assess 30 points for a

prior endangering the welfare of a child conviction without

regard to whether the underlying offense involved conduct that is

sexual in nature, subject to the court's authority to grant a

downward departure in the exercise of its discretion.[3]  Here,

there is no factual dispute that defendant had a prior

endangering the welfare of a child conviction.  Therefore, the

SORA court's assessment of 30 points under risk factor 9 was not

in error.  Thus, the only question of law that remains is

whether, due to the nonsexual nature of defendant's prior

endangering conviction, the court abused its discretion in

declining to downwardly depart from defendant's presumptive risk

level three.[4]

        As we recently stated, "[i]n determining whether to

_____

[3] Defendant's suggestion that the court should have
arbitrarily assessed 5 points, instead of 30 points, under risk
factor 9 is misguided, as it is in contravention of the
Guidelines.  A court may depart from the presumptive *risk level*,
not from points that are properly assigned within a specific risk
factor.  Furthermore, the People's apparent concession of error
as to the alleged overassessment of points under risk factor 9 in
their brief is not binding on this Court.  The People never
advanced this erroneous legal argument before the SORA court, nor
did they raise it at the Appellate Division; accordingly, we need
not consider this newfound argument in reviewing the question of
law presented herein.

[4] To the extent that defendant raises a constitutional due
process challenge to the Guidelines on appeal, such argument is
unpreserved.

depart from a presumptive risk level, the hearing court weighs the aggravating or mitigating factors alleged by the departure-requesting party to assess whether, under the totality of the circumstances, a departure is warranted" (People v Howard, ___ NY3d ___, 2016 NY Slip Op 03415 [2016], citing People v Gillotti,23 NY3d 841, 861 [2014]).  Here, the only mitigating factor defendant presented to the SORA court was that the prior endangering the welfare of a child conviction was not sexual in nature.  Although the SORA court considered this argument when deciding whether to downwardly depart, it certainly was not required to consider the mitigating factor in a vacuum without considering any aggravating factors that would weigh against a downward departure (see Guidelines at 4).  In this case, there were numerous aggravating factors not adequately captured by the RAI that countered defendant's argument for a downward departure. Therefore, the SORA court did not abuse its discretion in determining that the "totality of the circumstances" did not warrant a downward departure because such a departure would have resulted in an "under-assessment of the defendant's dangerousness and risk of sexual recidivism" (People v Gillotti, 23 NY3d at 861).

        The aggravating factors included defendant's admission before the SORA court that the prior endangering the welfare of a child conviction arose from an allegation of "excessive corporal punishment . . . involving striking his son with some kind of a

stick and leaving a bruise." Moreover, an excerpt from the related child protective report contained in the record stated that defendant beat his son with a two-by-four, resulting in a physical injury of an approximately four by five inch large purple bruise below the son's buttocks. Additionally, as described above, the victim's sworn statement indicated that she experienced years of physical abuse as a result of her attempts to refuse defendant's sexual advances. Moreover, the victim averred in her statement that defendant forced her to have incestuous sexual intercourse with him seven to eight times per month starting two months after she moved in with him until the time she moved out, which was from when she was 13 years old until she was 28 years old. Thus, the victim declared that the sexual intercourse spanned a period of over fifteen years. Defendant pleaded guilty to one month of incestuous intercourse and then admitted to probation in the presentence report to having said intercourse with the victim for a period spanning more than eight years, claiming self-servingly that the crimes began when the victim was 18 or 19 years old -- a claim that was not credited by the SORA court. Lastly, the victim also reported that, at the time her first child was born, she had not had sexual intercourse with anyone except for defendant.

Defendant's adjudicated risk level is meant to capture his risk of reoffense and danger to the community (see Guidelines at 2-3). Given the enormity of defendant's uncharged sexual

crimes, the facts of which were proven by clear and convincing evidence and not fully accounted for in the RAI, the SORA court did not abuse its discretion when it declined to downwardly depart from the presumptive risk level three.  Defendant's focus in isolation on his nonsexual prior endangering the welfare of a child conviction as a mitigating factor ignores that the violent nature of that prior offense[5] and the gravity of the current incest offense are both probative of defendant's risk of reoffense.

The order of the Appellate Division should be affirmed, without costs.

---

[5] Indeed, the allegations underlying the prior endangering conviction mirror the elements of the violent felony of assault in the second degree, which is assessed 30 points on the RAI (Penal Law §§ 70.02 [1] [c], 120.05 [2]).

People v Dennis J. Sincerbeaux

No. 113

RIVERA, J.(dissenting):

Defendant challenges his designation under New York's Sex Offender Registration Act (SORA) as a level three risk to reoffend on the ground, among others, that County Court improperly accepted the Board's risk assessment score of 30 points under factor 9 based on a prior conviction that did not involve sexual misconduct. At the SORA hearing defendant requested that his risk assessment reflect the nonsexual nature of his prior offense, which he correctly identified as a permissible ground for departure under the Sex Offender Registration Act Risk Assessment Guidelines and Commentary (Guidelines).[1] County Court abused its discretion when it denied this request without proper consideration of the ground presented. This error matters because if, as advocated by defendant, County Court had assigned him a lower risk level, he would be subject to somewhat less onerous SORA reporting

_____

[1] Contrary to the majority's suggestion (majority op. at 8 n 3), a departure by the court because of an overassessment of defendant's risk under factor 9 would not have been arbitrary but, rather, based specifically on a mitigating factor expressly provided for in the Guidelines.

- 1 -

requirements than a level three designation.[2]

The Guidelines assign 30 points under risk factor 9 for a prior conviction or adjudication of endangering the welfare of a child, the offense at issue here, but only 5 points for a prior criminal history absent felony or sex crime convictions or adjudications (Guidelines at 3).  The Board of Examiners of Sex Offenders (Board) in drafting the Guidelines

> "decided to treat endangering the welfare of a child as if it were a sex crime because it generally involves sexual misconduct, especially when it is part of a plea bargained disposition. *Where a review of the record indicates that there was no such misconduct, a departure may be warranted*"

(id. at 14 [emphasis added]).

It is undisputed that defendant's conviction for endangering the welfare of a child did not involve sexual misconduct.  The question presented on this appeal is whether County Court properly considered defendant's request to be assessed a lower risk because his offense lacked a sexual component.  In support, defendant argued to County Court that his case fell squarely within the Guidelines and the Board's explicit proposed grounds

---

[2]For example, while both level two and level three offenders are required to register for life, a level two offender who does not have a special designation has the opportunity to petition for relief from the registration requirement after 30 years (Correction Law § 168-o [1]; Correction Law § 168-h [2]).  A level three offender must verify the offender's address, in person, every 90 days (Correction Law § 168-h [3]), and annually update the offender's registry photograph, compared to every three years for level one and two offenders (Correction Law § 168-f [b-2], [b-3]).

for departure.[3]   County Court stated, "the fact that [the

offense] did not include conduct of a sexual nature, does not

preclude its consideration by the Court pursuant to the

guidelines."   This is an accurate statement of the Guidelines'

approach, but not responsive to defendant's argument.   Defendant

did not contend that County Court was without authority to

consider the conviction, only that the court should look to the

underlying fact that the offense did not involve sexual

misconduct, and then weigh that fact in its determination of

whether the offense comported with crimes scored at 5 versus 30

points and a departure warranted on that basis, as provided by

the Guidelines.[4]

Whether, as the majority concludes, defendant could be

designated a level three offender based on his criminal history

is of no moment to the issue on appeal because that determination

should be made in the first instance by the SORA court (majority

---

[3]Defendant failed to preserve his constitutional and
statutory challenge to the Board's treatment of his endangering
the welfare of a child conviction as if it was a sex crime.
Thus, whether the Board may automatically assess 30 points under
factor 9 without clear and convincing evidence of defendant's
sexual misconduct remains an open question.   For purposes of my
analysis, I assume, without deciding, that the Board may lawfully
classify and score this offense in such a manner, while providing
for a departure from the risk level.

[4]Notably, the People take the position on this appeal that
defendant should not have been assessed 30 points under factor 9.
They request that the case be remanded to the SORA court to
consider the People's upward modification on the original hearing
record or on a motion to reconsider defendant's risk assessment
based on his conduct after the SORA hearing.

op. at 8-9).  In my view, the record cannot be read, as apparently the majority does, to establish that County Court gave proper consideration to the Guidelines' instruction concerning factor 9 and defendant's argument that his offense was nonsexual in nature.  Therefore, I dissent and would reverse and remand for the court's assessment of defendant's risk level in light of the Guidelines and the facts of his case, and, if necessary, for a determination on the People's request for an upward departure.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, without costs.  Opinion by Chief Judge DiFiore. Judges Abdus-Salaam, Stein and Garcia concur.  Judge Rivera dissents in an opinion in which Judge Pigott concurs.  Judge Fahey took no part.

Decided June 28, 2016