# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 86  SSM 42
The People &c.,
        Respondent,
    v.
Quinn Britton,
        Appellant.

Submitted by Denise A. Corsi, for appellant.
Submitted by Julian Joiris, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed, without costs.

The record supports the affirmed finding that defendant engaged in sexual intercourse, deviate sexual intercourse, or aggravated sexual abuse, warranting the imposition of 25 points under risk factor 2 in determining defendant's risk level under the

- 1 -

Sex Offender Registration Act. Contrary to defendant's argument, his acquittal of charges at his criminal trial relating to such conduct, does not foreclose the hearing court from finding, by clear and convincing evidence, that he engaged in such acts (see Reed v State of New York, 78 NY2d 1, 7-8 [1991]; see e.g. People v Headley, 147 AD3d 988, 988 [2d Dept 2017], lv denied, 29 NY3d 916 [2017]; People v Vasquez, 49 AD3d 1282, 1284 [4th Dept 2008]).

People v Quinn Britton

SSM 42

RIVERA, J. (dissenting):

The sole issue in this appeal is whether the People satisfied their burden to establish by clear and convincing evidence that the conduct of which defendant was acquitted had in fact occurred. I conclude the People failed to meet this heavy burden because the jury rejected the evidence, rendering it unreliable for purposes of the Sex Offender Registration Act (SORA).

Defendant's jury trial turned on competing narratives of the complainant and the defendant as the People had no physical evidence or eyewitnesses to the crimes charged. The jury acquitted defendant of first-degree rape (Penal Law § 130.35 [4]) and two counts of criminal sexual act in the first degree (Penal Law § 130.50 [4]), all felony charges, and convicted of one count of second-degree sexual abuse (Penal Law § 130.60 [2]), a misdemeanor. Despite the acquittal of the felony charges, the SORA court assessed defendant points for having committed the specific conduct on which these charges were based. On the particular facts of this case, in which the only evidence of the conduct for

- 1 -

which defendant was assessed these points was rejected by the jury, the SORA court erred in finding clear and convincing evidence of the alleged sexual contact. Therefore, I would reverse the order adjudicating defendant a risk level two offender, and dissent from the majority's contrary determination on this appeal.

I.

Defendant's Trial

At defendant's trial, the complainant, defendant's 13-year-old niece, A.B., testified that the incident occurred when she was 11 years old and visiting her grandmother for Thanksgiving. The grandmother lived with her son, defendant, and A.B. had visited them on prior occasions. Sometime during the evening, A.B. was in the living room with her grandmother, who had fallen asleep, when defendant invited A.B. into his room.

Defendant closed the bedroom door behind her and told her to remove her clothing and lie down on the bed. Defendant then touched her breasts, stomach, and vagina with his hands and mouth, put on a condom, had penetrative sex with her, and then told her to perform oral sex on him.

A.B.'s older brother testified that in December of this same year, the complainant came to him upset, and informed him that defendant had told her to go into his bedroom, told her to take off her pants, performed oral sex on her, made her perform oral sex on him, and that defendant attempted to have penetrative sex with her but could not because his penis "wouldn't fit."

A police detective testified that after defendant was arrested, defendant waived his Miranda rights and made various statements regarding his family and A.B.'s allegations. The detective testified that after defendant provided a detailed history of conflicts he had with A.B.'s mother, defendant stated that on Thanksgiving A.B. was visiting and he invited her into his room. He began talking to her about her interactions with boys at school, and then hugged her, kissed her on her neck, stomach, and vagina, and noted that the complainant was lubricated. These statements were not made in writing or videotaped.

The People also presented testimony from a psychologist about the circumstances that may lead a child victim of sexual abuse to delay disclosure, as well as a physician who testified that complainants of sexual abuse frequently do not exhibit physical signs of the abuse. In fact, there was no physical evidence that connected defendant to the charged crimes.

A.B.'s grandmother testified on defendant's behalf that defendant had spent most of Thanksgiving in his bedroom because he did not feel well. She testified that A.B. was in the living room with her the entire night watching television, that she never heard defendant call A.B. to his room or A.B. enter his room, and she did not notice anything out of the ordinary that night or the following morning when they ate breakfast together. Defendant testified, denying A.B.'s allegations in their entirety, and claiming that he never confessed to the officer, although the officer tried to intimidate him into admitting the allegations.

The court submitted four counts to the jury. The first-degree rape count charged defendant with sexual intercourse with the complainant. In its charge to the jury, the court defined "sexual intercourse" as "any penetration, however slight, of the penis into the vaginal opening." The first-degree criminal sexual act counts charged two separate acts of oral sex, one for mouth to penis contact and the other mouth to vagina contact. The count for second-degree sexual abuse charged defendant with oral contact with the complainant's breasts.

Over three days of jury deliberations the jury sent three separate notes to the judge announcing it was deadlocked. After the first deadlock note, the court issued a "light" Allen charge.[1] The second note announced: "We, the jury, are hopelessly deadlocked on the verdict and we will not reach a verdict." In response, the court gave a full Allen charge. After the third note defense counsel moved for a mistrial. The trial court responded: "They can't reach a decision on whether to believe [A.B.'s] version or [defendant's] version. And with that credibility issue, I think they are at loggerheads." Nevertheless, before the court responded to the note, the jury returned a verdict acquitting defendant of first-degree rape and the two counts of first-degree criminal sexual act for oral sexual conduct, and convicting him of second-degree sexual abuse.

---

[1] An Allen charge is an instruction given to jurors after a jury reports that it is deadlocked, stressing that "if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, unon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority" (see Allen v United States, 164 US 492, 501 [1896]).

The SORA Determination

At the SORA hearing before the same judge who presided over defendant's trial, the court considered A.B.'s grand jury testimony, court file and a Risk Assessment Instrument filed by the District Attorney, recommending an assessment of 85 points, including, as relevant here, 25 points under risk factor two for sexual intercourse or oral sexual conduct, despite defendant's acquittal for such conduct (see Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 9 [2006].[2] Over defendant's objection, the court assessed defendant these 25 points based on the complainant's grand jury and trial testimony. Defendant's total score, inclusive of the 25 points, was 85, placing him at a presumptive risk level two to reoffend, and the court adjudicated him as such. Absent the addition of the challenged 15 points, defendant would have fallen within the lower presumptive risk level one.[3]

On appeal, defendant argued that the SORA court erroneously assessed 25 points under risk factor two, despite the jury having acquitted him of the crimes related to the penetrative and oral sex contact, and that there was no credible evidence supporting the court's point assessment. The People responded that the acquittal did not foreclose the SORA court's finding that there was clear and convincing evidence supporting defendant's

---

[2] Defendant had waived preparation of his Risk Assessment Instrument by the Board of Examiners of Sex Offenders.

[3] The prosecutor did not seek an upward departure should the court decide not assess defendant 25 points under factor two, and defendant did not request a downward departure should the court assess 25.

risk level two designation.  The Appellate Division affirmed, holding that "even though the defendant was acquitted [of the three counts], the People established by clear and convincing evidence, including the trial testimony and the complainant's grand jury testimony, that the defendant engaged in sexual intercourse, deviate intercourse, or aggravated sexual abuse with the complainant" (People v Britton, 148 AD3d 1064, 1064 [2d Dept 2017]).  We granted defendant leave to appeal (People v Britton, 29 NY3d 914 [2017]).[4]  Contrary to the majority, I would now reverse the risk designation of the courts below as improperly based on unreliable evidence that defendant had committed the acquitted conduct.

## II.

The purpose underlying SORA is to protect the public from sex offenders, and "[g]iven the significance of the mission, an accurate determination of the risk a sex offender poses to the public is the paramount concern" (People v Mingo, 12 NY3d 563, 574 [2009]).  The offender's risk level classification is determined at a SORA hearing, where the offender and the People each present evidence to the court in support of their positions as to point assessment and risk level determination (Correction Law § 168-n).  At the hearing, the People "bear the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]).  The court "may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the

---

[4] A judge of this Court denied defendant's direct appeal (People v Britton, 28 NY3d 927 [2016]).

determinations.  Facts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence and shall not be relitigated" (id.).  Moreover, SORA court shall review a victim's statements in determining a defendant's risk level (id.; Mingo,12 NY3d at 571).  However, unreliable evidence cannot serve as a basis for a risk assessment since the statutory goal is the accurate assessment of a defendant's risk level.

The SORA statute "imposes on the People the burden of proof by clear and convincing evidence largely to create an extra procedural protection against an excessive risk level classification and the resulting deprivation of the defendant's liberty" (People v Gillotti, 23 NY3d 841, 862, [2014]).  We have recognized that

> "while the government has a countervailing interest in 'the protection of the community against people who have shown themselves capable of committing sex crimes,' SORA permits the government to vindicate that interest only by proving facts indicative of sexual recidivism by the heightened standard of clear and convincing evidence. In placing this exceptional burden on the People—a burden not otherwise mandated by constitutional due process—the legislature evidently sought to carefully guard a defendant's liberty interest" (id. at 863–864, quoting People v Knox, 12 NY3d 60, 67 [2009]).

To meet the clear and convincing evidence standard, the evidence must satisfy the jury that there is "a high degree of probability" that the conduct occurred (NY PJI--Civil 1:64).  It is a "a higher, more demanding standard than the preponderance standard" (In re Gail R., 67 AD3d 808, 811–812 [2d Dept 2009] [internal quotation and citation omitted]), and it applies "[w]here particularly important personal interests are at stake" (Matter of Storar, 52 NY2d 363, 379 [1981]).

Here, the SORA court assessed defendant 25 points for acquitted conduct, basing its decision on A.B.'s grand jury and trial testimony. However, this evidence was not reliable for SORA risk assessment purposes because the jury rejected A.B.'s allegations of the sexual conduct underlying these 25 points. The verdict can only be understood as reflecting that the jurors did not fully credit A.B.'s version, even though a police officer testified as to statements by defendant that appeared to corroborate her allegation that defendant performed oral sex on her.

To the extent the People rely on Mingo and People v Sincerbeaux (27 NY3d 1076 [2016]) for the proposition that the grand jury testimony was admissible, that, of course, is beside the point. The issue here is the reliability of testimony repeated at defendant's trial, under cross examination, and rejected as not credible. These cases are also on their face distinguishable. In both cases the defendant pleaded guilty to the sex crime and the issue before the SORA court in each was whether the People established by clear and convincing evidence of some secondary and aggravating fact. In Mingo, defendant pleaded to first degree rape and the issue was whether the People had established defendant was armed with a dangerous weapon at the time of the rape (12 NY3d at 567-568). In Sincerbeaux, the defendant pleaded guilty to incest in the third degree and the People maintained that they had established with the victim's statement clear and convincing evidence of forcible compulsion, as well as the victim's age (27 NY3d at 688-689). Neither case addressed the reliability of statements related to the underlying sexual conduct where the defendant is acquitted of the charged sex crime and the defendant maintains his innocence. Neither case

provides a suitable analytic framework for determining reliability under circumstances like those presented in this appeal where the jury rejects the complainant's narrative of the events, the complainant's testimony is inconsistent in meaningful ways, and no physical evidence connects the defendant to the sexual crime, and thus the jury's verdict turns on its assessment of the complainant's credibility.

The People argue that because "[a]n acquittal of criminal charges is not equivalent to a finding of innocence" (Reed v State of New York, 78 NY2d 1, 7 [1991]), the jury's acquittals are of no consequence because SORA courts apply a lower burden of proof than a criminal trial. Thus, while the jury concluded that the People did not prove the acquitted counts beyond a reasonable doubt, the SORA court could find that A.B.'s testimony provided clear and convincing evidence that defendant committed the charged conduct. This argument is a red herring and misses the mark.

First, contrary to the People's suggestion, the clear and convincing standard is not de minimus, but instead is a heavy burden of proof and persuasion. It is "the most rigorous standard of burden of proof in civil cases," and is applied to cases including decisions literally affecting a party's life or death (Matter of Westchester Cty. Med. Ctr. on Behalf of O'Connor, 72 NY2d 517, 531 [1988] [applying clear and convincing evidence standard to decision of whether incompetent patient had made a commitment when competent to decline medical assistance in providing nourishment]). While discussing O'Connor, the United States Supreme Court quoted another case stating the standard requires evidence that "'produces in the mind of the trier of fact a firm belief or conviction as to the truth of

the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue'" (Cruzan by Cruzan v Dir., Missouri Dep't of Health, 497 US 261, 285 n 11 [1990], quoting In re Jobes, 108 NJ 394, 407-408 [1990]). Thus, although we have described a SORA proceeding as civil in nature, the People are subject to the high clear and convincing burden for the very reason that a defendant's liberty interest is at stake and the risk level determination has severe adverse consequences for a defendant (Gillotti, 23 NY3d 863). Therefore, the People cannot seek to elide this legislatively imposed demanding burden by arguing it falls some slight measure below the reasonable doubt standard.

Second, the acquittals here powerfully reflect the unreliability of A.B.'s testimony. As the trial judge recognized, the jurors were presented with two versions and they had to choose one. In other words, they either believed A.B. or they did not when she testified that defendant had penetrative and oral sex with her in his room. The jury informed the court on three separate occasions that it was deadlocked and the jurors obviously struggled with the case. Based on defendant's acquittals, the only reasonable conclusion is that the jury rejected the complainant's version with respect to the penetrative and oral sexual conduct that accounted for the points assessed by the SORA court.

While there may be cases in which there is clear and convincing evidence of defendant's sexual acts notwithstanding acquittal of the underlying charge, this is not such a case. As there was no physical evidence of the sexual contact, the jury here was faced

with weighing the testimony of the defendant, who insisted no inappropriate contact occurred, with that of A.B., her brother, and a police officer. The inconsistencies in the testimony of the People's witnesses is further reason for not treating complainant's testimony as clear and convincing evidence of the act itself. A.B. testified that defendant touched her beneath her clothes, performed oral sex on her, forced her to perform oral sex on him, and had penetrative sex with her. The brother testified that complainant told him a similar narrative a month after the incident, with certain important discrepancies: the complainant testified that she and defendant had penetrative sex for about ten minutes, while the brother testified that she told him defendant had attempted to have sex with her, but could not because his penis would not fit. The police detective stated only that defendant confessed to touching and kissing, and performing oral sex on A.B. Therefore, under these circumstances, the People did not establish by clear and convincing evidence that it was "highly probable that what is claimed actually happened" (In re Gail R., 67 AD3d at 811–812).

The verdict indicates that the jury did not fully adopt any of the competing narratives. If it fully believed A.B., it should have convicted defendant of all four counts. If it believed the police officer, it should have convicted defendant of sexual abuse, as well as one of the oral sex counts. If it believed the defendant, it should have acquitted him of all charges. The only conduct for which the jury convicted defendant was conduct that was consistent across A.B.'s account, the account she gave to her brother, and the defendant's confession to the officer. As such, it appears that the jury had doubts about the veracity of

A.B.'s testimony, and only accepted those aspects that were consistent across the testimony of all the People's witnesses. Even then, the jury declined to convict defendant for performing oral sex on complainant, despite that act being a common thread across the three witnesses. In a case that, as the trial judge here noted, came down to a credibility determination as to the complainant and defendant's narrative, it cannot be said that there was clear and convincing evidence of defendant's guilt where the jury accepted only those details confirmed by other witnesses, and summarily rejected all of the details that were exclusive to A.B.'s account, meaning the penetrative and oral sex.

As this Court has recognized, the clear and convincing evidence standard is an exacting one (see Gillotti, 23 NY3d at 863-864). "[T]he registration duties that SORA imposes are a nontrivial restriction on the individual's liberty, and there is a material difference between having to register for ten years and having to register for life" (In re W.M., 851 A2d 431, 453 [DC 2004]). In a case such as this, where the jury clearly had grave doubts about A.B.'s narrative, the courts below erred in concluding that her testimony was clear and convincing evidence of defendant having committed the sexual conduct necessary for an assessment of 25 points under risk factor two.

I dissent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, without costs, in a memorandum. Chief Judge DiFiore and Judges Stein, Fahey, Garcia, Wilson and Feinman concur. Judge Rivera dissents in an opinion.

Decided April 26, 2018