# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 37  SSM 28
The People &c.,
        Respondent,
     v.
Victor Diaz,
        Appellant.

Submitted by David R. Juergens, for appellant.
Submitted by Nancy Gilligan, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed, without costs.

In October 2009, defendant pleaded guilty to one count of course of sexual conduct

against a child in the first degree (see Penal Law § 130.75 [1] [b]), in satisfaction of a multi-

count indictment. The conduct underlying the offense included repeated acts of sexual intercourse and other sexual contact with an 11-year-old girl beginning in June 2006 and continuing until December 2007. At a SORA hearing conducted as defendant was nearing completion of his prison sentence, he was adjudicated a level two risk of reoffense due, in part, to the assessment of ten points under risk factor one, use of violence. That finding was based on information in the Presentence Investigation (PSI) report prepared in connection with the offense stating that "[o]n one or more occasions, he used physical force to coerce the victim into cooperation," information also included in the case summary prepared by the Board of Examiners of Sex Offenders. Defendant argues that this evidence was insufficient to supply evidence of use of violence because it constituted hearsay and did not more specifically describe his conduct. We disagree.

SORA adjudications, by design, are typically based on documentary evidence under the statute's "reliable hearsay" standard. Case summaries and PSI reports meet that standard (see People v Mingo, 12 NY3d 563, 573 [2009]), meaning they can provide sufficient evidence to support the imposition of points. PSI reports are prepared by probation officers who investigate the circumstances surrounding the commission of the offense, defendant's record of delinquency or criminality, family situation and social, employment, economic, educational and personal history, analyzing that data to provide a sentencing recommendation (see CPL 390.30[1]). Their primary function is to assist a criminal court in determining the appropriate sentence for the particular defendant based on the specific offense. Defendants have a right to review the report prior to sentencing

(see CPL 390.50[2][a]) and may challenge the accuracy of any facts contained therein at that time (see CPL 400.10). Indeed, defendants have a strong incentive to timely dispute and seek correction of inaccurate statements because they may impact the court's sentencing determination. Unless altered through this process, factual statements in PSI reports can supply an evidentiary basis for the imposition of points, as is clear from our precedent.

To be sure, evidence that is admissible and sufficient need not be credited by the SORA court, the fact-finder charged with weighing the evidence and determining whether the People met their burden of proof. In this case, at the SORA hearing, defendant could have challenged the accuracy of the statement concerning his use of violence by offering contradictory documentary evidence or testimony and, if he had, the court might have credited his proof. However, the statement's accuracy was never disputed, nor did the courts below err in rejecting defendant's claim that the evidence must be discounted because the acts of force were not described in greater detail. Where, as here, the Appellate Division affirmed the hearing court's findings, made under the proper evidentiary standard, "this Court's review is limited to whether the decisions below are affected by an error of law or are otherwise not supported by the record" (People v Lashway, 25 NY3d 478, 483 [2015]). Because there is record support for the imposition of points under risk factor one, there is no basis to disturb the Appellate Division order.

People v Victor Diaz

SSM No. 28

RIVERA, J. (dissenting):

Defendant is subject to registration under the Sex Offender Registration Act ("SORA") and on this appeal he challenges his risk level assessment. Whether defendant is subject to SORA's more onerous registration requirements turns on the allocation of ten

- 1 -

points on a risk assessment scale for the defendant's alleged use of forcible compulsion against the victim of the underlying SORA-eligible crime. Those ten points are based solely on an unattributed conclusory hearsay sentence from a pre-sentence investigation report ("PSI") prepared by the Office of Probation. However, defendant was neither charged nor convicted for a crime involving violence and no record evidence—hearsay or nonhearsay—supports this statement. It may very well be that the statement is correct, but there is no way to know because the People did not submit any documentary or testimonial evidence by which to measure the statement's accuracy. The People argue that under People v Mingo (12 NY3d 563, 571-573 [2009]), we should accept this one-sentence assertion at face value as "reliable hearsay," but doing so extends Mingo beyond the analytic boundaries of its holding, absolves the People of their burden of persuasion, and renders the SORA proceeding a farce. I would reverse, clarifying that a conclusory statement in the PSI that otherwise lacks record support, standing alone, is not clear and convincing evidence of the fact asserted.

I.

"Persons who commit certain sex offenses must comply with New York SORA's mandate to register with the State Division of Criminal Justice Services . . . ." (People v Francis, 30 NY3d 737, 742 [2018]). "SORA contains a detailed system of registration and community notification, with each sex offender's registration and notification obligations emanating from [the offender's] designated risk level within a three-tiered classification

scheme" (People v Cook, 29 NY3d 121, 125 [2017]; see Correction Law §§ 168-l, 168-n, 168-h, 168-i, 168-j; see also id. § 168-d [3]).[1]

In accordance with the legislative mandate, the New York State Board of Examiners of Sex Offenders ("the Board") has "develop[ed] guidelines and procedures to assess [a sex offender's] risk of a repeat offense" (Correction Law § 168-l [5]; see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary [2006] ["Guidelines"]). The Board designed a risk assessment instrument ("RAI") to determine an individual sex offender's risk level based on a number produced by aggregation of numerical values assigned to each risk factor identified in the Guidelines (see Correction Law § 168-l [5];

---

[1] We described the tripartite SORA framework in Francis:

> "Each risk level imposes registration requirements, increasing in severity and duration. 'The duration of registration and verification for a sex offender who . . . is designated a sexual predator, or a sexually violent offender, or a predicate sex offender, or who is classified as a level two or level three risk, shall be annually for life' (Correction Law § 168-h [2]), while 'any sex offender who is classified as a level two risk, and who has not been designated a sexual predator, or a sexually violent offender, or a predicate sex offender . . . who has been registered for a minimum period of thirty years may be relieved of any further duty to register . . . by the sentencing court' (id. § 168-o [1]). Sex offenders who have been given a level three designation must 'personally appear at the law enforcement agency having jurisdiction . . . every year . . . for the purpose of providing a current photograph' (id. § 168-f [2] [b-2]), while those with level one or level two designation must do the same every three years (id. § 168-f [2] [b-3]). 'Sex offender[s] having been designated a level three risk or a sexual predator shall also personally verify [their] address every ninety calendar days' (id. § 168-h [3]), while offenders designated a level one or two risk need only register changes of address (id. § 168-f [4])" (Francis, 30 NY3d at 743 n 4).

Guidelines at 3).  In other words, an offender's "presumptive risk level" is produced "by adding the points that the offender scores in each category" of risk factors (Guidelines at 3).[2]  Nevertheless, the Board recognizes that adding up numbers may not always be the best way to determine risk to the public.  The Guidelines state that the Board (or the SORA sentencing court) may depart from the recommended risk level because while the RAI should generally result in a proper risk classification, it may not account for the nuances of an individual case. Thus, the Guidelines allow for an upward or downward departure "if special circumstances warrant" (Guidelines at 4).

---

[2] The risk categories, set out in the first four pages of the Guidelines, track the mandatory factors to be considered by the Board as set forth in section 168-l of the Correction Law. Factors related to the offense of conviction include whether the offender used violence or force (see Correction Law § 168-l [5] [b] [ii]); the nature of the sexual contact with the victim (see generally id. §§ 168-l [a] [iv], [b], [i]); whether there were multiple victims (see generally id. § 168-l [5] [b]); whether the offender engaged in an ongoing course of misconduct (see generally id.); the age of the victim(s) (see id. § 168-l [5] [a] [iv]); whether the victim was otherwise vulnerable (see generally id.); and the relationship between the offender and the victim (see id. § 168-l [5] [b] [i]). Factors related to the offender's general criminal history include the age of the offender at the time of the offender's first sex offense (see id. § 168-l [5] [a] [v]); the number and nature of the offender's prior offenses (see id. § 168-l [5] [b] [iii]); and the recency of the offender's other offenses (see id.).  Other factors related to post-offense behavior and release environment include whether the offender has accepted responsibility for the misconduct charged (see generally id. § 168-l [5] [f]); the offender's comportment while serving the offender's sentence for the offense of conviction (see id. § 168-l [5] [g]); the extent of supervision associated with the offender's release (see id. § 168-l [5] [c]); and the appropriateness of the offender's living or employment situation (see id.).  Finally, the Guidelines contain four overrides which "automatically result in a presumptive risk assessment of level 3: (i) a prior felony conviction for a sex crime; (ii) the infliction of serious physical injury or the causing of death; (iii) a recent threat to reoffend by committing a sexual or violent crime; or (iv) a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases his ability to control impulsive sexual behavior" (Guidelines, Commentary at 3-4; see Correction Law §§ 168-l [5] [a] [i], [ii], [b] [ii], [iii], [e], [h]).

Before a sex offender is released from confinement the Board, in compliance with its charge under SORA, prepares an RAI and case summary setting forth the Board's confidential "recommendation to the sentencing court . . . providing for one of the . . . three levels of notification depending upon the degree of risk of re-offense by the sex offender" (Correction Law § 168-l [6]).  The court then "hold[s] a hearing, in which the People have the burden of proving, by clear and convincing evidence, the facts supporting the sought-after determinations" (Cook, 29 NY3d at 125; see Mingo, 12 NY3d at 571).  The clear-and-convincing evidence standard is substantially more exacting than a mere preponderance of the evidence standard, requiring evidence sufficient to "satisf[y] the factfinder that it is highly probable that what is claimed actually happened" (Matter of Gail R., 67 AD3d 808, 811-812 [2d Dept 2009]; see Currie v McTague, 83 AD3d 1184, 1185 [3d Dept 2011]).  As the Court has emphasized, since SORA's primary concern is the accurate determination of an offender's risk to the public, "the District Attorney should proffer the best evidence available to illuminate the relevant facts" (Mingo, 12 NY3d at 574).  The court, after applying the Guidelines point scale to the facts proven at the hearing, may "accept[] the Board's recommendation or depart[] from it and assign[] a different risk level classification" (Francis, 30 NY3d at 744; see generally People v Gillotti, 23 NY3d 841, 860-864 [2014]).

II.

Defendant appeals from an order of the Appellate Division which affirmed, without opinion, his level two moderate risk assessment under SORA (171 AD3d 1511 [4th Dept

2019]).[3]  Defendant contends that County Court erred by assessing ten points against him under risk factor 1, "forcible compulsion," on the basis of a single generic sentence in his PSI, and its repetition in the Board's Case Summary.  It is undisputed that absent those ten points, defendant would have been assessed presumptively risk level one, the lowest level.

According to the PSI, defendant engaged in sexual conduct with a victim on multiple occasions, including sexual intercourse on at least one occasion.  Defendant pled guilty to course of sexual conduct against a child in the first degree in violation of Penal Law § 130.75 (1) (b).[4]  The PSI prepared by the Office of Probation for use by the sentencing court included a statement that "[o]n one or more occasions, [defendant] used physical force to coerce the victim into cooperation."  Defendant was sentenced to ten years' confinement.

As defendant's scheduled release date approached, the Board prepared a Case Summary for use by the SORA sentencing court, assessing defendant 75 points total, including, as relevant to this appeal, 10 points under factor one for use of forcible compulsion, and recommending defendant be adjudicated a level two offender.  The Case

---

[3] The appeal was placed on our alternative review track (see Rules of Ct of Appeals [22 NYCRR] 500.11). Defendant does not expressly oppose adjudication on this track, and his apparent request for an opportunity for full briefing and oral argument should the Court not be inclined to hold in his favor is not grounds to normal course an appeal.

[4] A person violates this statute when that person, "being eighteen years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than thirteen years old" (Penal Law § 130.75 [1] [b]).  Use of force is not an element of the offense (id.).  Defendant was also charged with predatory sexual assault against a child (Penal Law § 130.96) and endangering the welfare of a child (Penal Law § 260.10 [1]); his guilty plea satisfied these charges.  Use of force is not an element of either of these offenses (Penal Law §§ 130.96, 260.10 [1]).

Summary referenced the statement in the PSI about use of force, inaccurately stating that "the PSI identifies that on *more than one* occasion force was used." The Case Summary also stated that defendant's disciplinary record was satisfactory and he remained incident free. The Board specified that it was not recommending an upward departure.

The People adopted the Board's point assessment and recommendation, relying on the statement in the PSI that defendant had used force on one or more occasions and its repetition in the Case Summary. At the SORA hearing, defendant objected that the lone "conclusory" statement about use of force in the PSI (together with its reference in the Case Summary) was not "enough for [the court] to find by clear and convincing evidence that [the people] have met their burden for ten points" under the forcible compulsion factor. County Court observed that rejection of the ten points for forcible compulsion would result in a total score of 65, placing defendant within the level one presumptive risk category— the lowest-risk offender category under SORA. In response, the Assistant District Attorney argued that the PSI was reliable hearsay. County Court initially appeared to question this argument:

> "So, I just want to take a minute and discuss this perhaps to its logical conclusion. So, if there is a probation officer that was putting together a PSI and one of the documents that the probation officer had was an investigator's report that was a narrative *that did not include statements from the victim* or statem[e]nts from a witness, would it be fair to say that such a report could be based on hearsay and then find its way through the food chain, so to speak, into the case summary? For example, I remember [i]n many cases reading a federal pre-sentence report, kind of a rendition of the U.S. Attorney's file without there being attached, I guess what [defense counsel] is saying, a *supporting deposition of the victim* or a medical examination report. I guess the three of us would agree that

perhaps those [types of documents] would all be more persuasive. But your position is simply, and I don't mean this in a lesser fashion, but a regurgitation in the case summary of what exists in other documents unnamed is in fact reliable hearsay?"

Nevertheless, County Court rejected defendant's arguments and assessed him 10 points under factor one, adopting the Case Summary's inaccurate description of the PSI statement to find that "on more than one occasion [defendant] used physical force to coerce the victim into cooperation." It classified him as a level two sex offender based on his resulting 75-point total, five points above the top score for level one.[5]

The Appellate Division affirmed without opinion (171 AD3d 1511 [4th Dept 2019]). We granted leave to appeal (33 NY3d 912 [2019]). Unlike the majority, I would reverse because the People failed to establish by clear and convincing evidence defendant's alleged use of forcible compulsion.

## III.

Defendant argues that the unsupported statement in the PSI (and its inaccurate reprint in the Case Summary) that he used force "on one or more occasions" did not constitute clear and convincing evidence that he employed forcible compulsion in connection with his offense of conviction. Defendant acknowledges that this Court has previously said that PSIs and Case Summaries are generally admissible in SORA proceedings as "reliable hearsay" (Mingo, 12 NY3d at 571-573). However, defendant notes that Mingo expressly declined to take a position on how much weight to give

---

[5] County Court also rejected defendant's request for a downward departure. Defendant has not challenged that determination on appeal before this Court.

statements in these documents in any given case (id. at 573), and argues that here, the isolated statement in the PSI that he had used force "on one or more occasions" was too conclusory and untethered to specific facts to independently constitute the required "clear and convincing" evidence.[6]

The People rely on Mingo, asserting that PSIs are known to be "reliable" and, in any event, defendant did not present any evidence below to rebut the facts in the PSI and Case Summary. In the People's view, the law does not require that these documents contain specific facts in order to constitute clear and convincing evidence. On the facts of this case, the People are incorrect that the unattributed one sentence conclusory assertion satisfies their burden to present clear and convincing evidence in support of the recommended risk level.

A.

A SORA sentencing court "may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations" (Correction Law § 168-n [3]). Of course, hearsay is notoriously suspect because it is submitted to establish a truth without subjecting the speaker to cross examination. "[T]he rational basis for the hearsay classification is not the formula, 'assertions offered for the truth of the matter asserted,' but rather the presence of substantial risks of insincerity and faulty narration, memory, and

---

[6] Contrary to the majority's mischaracterization of the argument before us (majority op at 2), defendant agrees that the PSI and Case Summary are admissible hearsay under Mingo, but contends that the one-sentence assertion is not independently "clear and convincing evidence" because it is so vague, conclusory, and groundless that it does not adequately demonstrate any material fact.

perception" (Edmund M. Morgan, <u>Hearsay Dangers and the Application of the Hearsay Concept</u>, 62 Harv L Rev 177, 218 [1948]).  That is, "[t]he out-of-court declaration, offered for the truth of the matter it asserts, is suspect for four separate reasons.  The declarant may have misperceived the event originally.  The declarant may have perceived correctly yet suffered memory loss about the event before making the out-of-court declaration to the witness.  The declarant may have lied to the witness about the event.  The witness may have misunderstood declarant's report of the event.  While these dangers exist for every witness, hearsay is deemed inadmissible because the declarant is not under oath, not in the presence of the jury, and cannot be cross[-]examined" (Douglas D. McFarland, <u>Present Sense Impressions Cannot Live In The Past</u>, 28 Fla St U L Rev 907, 913 [2001]).  Nevertheless, "[e]xceptions to the hearsay rule usually are justified on the ground that evidence meeting the requirements of the exception possesses special reliability and often special need, such as the unavailability of the declarant" (2 Kenneth S. Broun et al., McCormick on Evidence § 254 [8th Ed. 2020]).

In <u>Mingo</u>, the Court adopted a standard for admissibility of hearsay in SORA proceedings which relieves a party from having to establish the methodology and source of the proffered document.  For case summaries and presentence reports, "no foundation is necessary to justify receipt of this type of evidence at a SORA hearing because the circumstances surrounding the development of the proof are evident from the face of the document and are well understood by a SORA court" (<u>Mingo</u>, 12 NY3d at 573).  In other words, the Court created a hearsay exception for SORA purposes, permitting automatic admission of case summaries and presentence reports previously routinely admitted by

lower courts.  We held that such an exception was justified because of the mechanical

document production process used to create these documents by persons knowledgeable

about the subject matter and the intended use of these documents (see id.).

> "The Board of Examiners of Sex Offenders is charged with
> producing accurate case summaries as an integral part of its
> functions and it has expertise culling through records to
> produce a concise statement of the factual information relevant
> to defendant's risk of reoffense.  Similarly, to assist the court
> in imposing an appropriate sentence, probation departments
> are charged with gathering a wide variety of information for
> inclusion in presentence reports—reports that 'may well be the
> single most important document at both the sentencing and
> correctional levels of the criminal process'" (People v Hicks,
> 98 NY2d 185, 189 [2002] [internal quotation marks and
> citations omitted]).
> "Case summaries and presentence reports are prepared with the
> knowledge that they will be relied on by courts.  No foundation
> is necessary for their consideration at SORA hearings because
> such documents are created under statutory mandates and their
> origins and function are well-known to SORA courts.  Of
> course, information found in a case summary or presentence
> report need not always be credited—it may be rejected when it
> is unduly speculative or its accuracy is undermined by other
> more compelling evidence" (Mingo, 12 NY3d at 572-573
> [citation omitted]).

Thus, under Mingo, case summaries and presentence reports are an exception to the rule

against hearsay because they satisfy a minimal threshold of facial reliability based on what

the judiciary knows about them and because they are assumed to be prepared in accordance

with a reliable process.

However, it is one thing to admit this type of document in the usual course at a

SORA proceeding, and quite another to unquestioningly credit the document's conclusory

factual statement absent evidentiary support for it in the record.  The former cannot justify

the latter. Nor is it proper to accept an assertion in such document when the reliability of the fact-gathering is in doubt. While Mingo eliminates the requirement that the People establish the foundation for documentary admission, as Mingo states plainly, a court is not required to credit the assertions contained therein (id. at 573). Instead, as with any other evidence, a court must determine the persuasiveness of the statements contained in the documents. Where the assertion lacks factual support in the record, is speculative or contradicted by other reliable evidence, or where the phrasing suggests possible error, the assertion falls short of "clear and convincing" evidence of the alleged fact (id.).

B.

The parties dispute whether the statement in the PSI that "[o]n one or more occasions, [defendant] used physical force to coerce the victim into cooperation," together with its repetition in the Case Summary, is sufficient to support County Court's holding under the clear and convincing evidence standard. Evidence is sufficient if the record below contains "'such relevant proof as a reasonable mind might accept as adequate to support [the] conclusion'" that the People carried their burden to establish defendant's use of forcible compulsion (Arthur Karger, Powers of the New York Court of Appeals § 13:3 [July 2019 Update], quoting Stork Restaurant v Boland, 282 NY 256, 274 [1940]; see id. § 13:6; Turturro v City of New York, 28 NY3d 469, 483 [2016]).[7] Here, the PSI and Case Summary's one-sentence conclusory statement is insufficient on its face.

---

[7] The People incorrectly contend that defendant's arguments involve factual issues beyond the scope of our review. However, "legal sufficiency is a pure question of law" (People v Hampton, 21 NY3d 277, 287 [2013]).

It is undisputed that the PSI and Case Summary statement constituted the entirety of the evidence the SORA court considered in arriving at its conclusion that defendant should be assessed ten points for forcible compulsion. It is also undisputed that the record is totally bereft of any evidence supporting or disclosing the source of the assertion. There are no documents in the SORA hearing record that would typically provide the basis for such assertion—no victim statement, no grand jury transcripts, and no plea colloquy admitting defendant's use of force, nor for that matter any other statement by defendant. The PSI itself suggests no such evidence would be forthcoming from these sources. First, under the heading "Victim's Statements/Amount of Damages," there is no mention of a statement by the victim or her mother that defendant used force, only a reference to the mother's statement that restitution was not requested. The only description of a sexual encounter is unattributed and makes no reference to the use of force. Second, the PSI states that during the interview defendant spoke generally about his background and hopes for the future but, on advice of counsel, made no statement about the crime. Thus, the source is not the defendant's admissions. The absence of any other evidence to support the assertion is particularly noteworthy because defendant was neither charged with nor convicted of a crime which includes force as an element (see Penal Law §§ 130.75 [1] [b], 130.96, 260.10 [1]).[8]

---

[8] Notably defendant was not charged with any force-related offenses, such as sexual abuse in the first degree (see Penal Law § 130.65 ["A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact: 1. By forcible compulsion . . . ."]).

Significantly, County Court's conclusion that defendant used force on *more than one* occasion has no support in the record.  The PSI only states that defendant used force on "one or more occasions" (PSI 1), and the Case Summary's misquotation of that statement adds no further support.  Thus, County Court plainly erred.  County Court also erred to the extent it considered the Case Summary as evidence independent of the PSI where the Case Summary purported only to recapitulate, without further explanation, the statement in the PSI.  The fact that the Board merely noted the statement in the PSI without providing a factual basis for the statement tends to undermine rather than support the probative value of that statement because it suggests that the Board did not find independent evidence that defendant used forcible compulsion on some unknown number of occasions.

Thus, the question is whether the People's submission of the statement in the PSI, standing alone, may satisfy "a reasonable mind" that they have carried their burden to prove the relevant facts by clear and convincing evidence.[9]  I conclude that the People's submission was deficient in this regard.

_____

[9] The People also contend that the evidentiary value of these statements is bolstered by the fact that defendant was much older and stronger than his victim and had authority over her. However, the People never presented this argument to County Court in support of their argument that the PSI statement sufficed to show forcible compulsion by clear and convincing evidence, and County Court did not make or rely on such findings.  As such, the argument is unpreserved and not properly before this Court.  In any event, while facts like these may be relevant to assessing the impact of particular actions taken by a defendant against a victim, and in particular whether the victim feared defendant might react violently to noncompliance (see People v Miller, 81 AD3d 1064, 1065 [3d Dept 2011]; People v Voymas, 39 AD3d 1182, 1183 [4th Dept 2007]), here such facts do not reveal anything about the course of events in which defendant is supposed to have "used physical force"

C.

The statement that "[o]n one or more occasions, [defendant] used physical force to coerce the victim into cooperation," is nothing more than the Probation Office's conclusion that defendant used force without any direct evidence of the *facts* underlying that conclusion. The lack of any record basis for this assertion renders the assertion textbook speculation, and thus insufficient evidence to support the assessment of points under existing precedent (see Mingo, 12 NY3d at 572-573).

There are additional reasons why the assertion is unreliable within the meaning of Mingo. The phraseology employed in the PSI and Case Summary put in question the reliability of the use-of-force assertion. The documents do not align; the PSI states that defendant used force "on one or more occasions," while the Case Summary refers to "more than one" occasion. The PSI assertion is also strangely vague ("one or more occasions") and is a legal conclusion rather than a "fact" (cf. Penal Law § 130.00 [8] [a] [defining "(f)orcible compulsion" as "to compel by . . . use of physical force"]). It bears all the earmarks of boilerplate language, unconnected to the individual case.

By contrast, where we have upheld SORA risk-level findings as supported by clear and convincing evidence, the SORA court has relied upon narrative statements as to the specific instances of conduct justifying the points assessed against defendant (e.g. People v Sincerbeaux, 27 NY3d 683, 688-689 [2016] [victim's detailed, sworn statement about being "hit" and "throw(n)" by defendant upon refusal to engage in intercourse adequately

---

absent any detail at all about how that force was used. One can only speculate about how they would have affected any such use of force on this record.

supported ten-point increase for forcible compulsion]; People v Pettigrew, 24 NY3d 406

[2010] [case summary's detailed description of defendant's armed, violent rape of victim

adequately supported increase]; cf. People v Cruz, 28 AD3d 819, 820 [3d Dept 2006]

[holding evidence of forcible compulsion insufficient where PSI merely stated that

defendant had been charged with overlapping offenses involving use of force]).  The

People did not identify any cases in which a SORA court relied on conclusory language

similar to the statement in defendant's PSI.

The assertion here is also wholly unattributed. We do not know whether the

allegation about use of force in the PSI is derived from a victim's statement or from

multiple levels of hearsay that do not meet the reliability standard set out in the statute (see

Correction Law § 168-n [3]; Mingo, 12 NY3d at 572-573).  While assertions in these

documents may, as a general rule, be admissible hearsay, that does not mean that a hearing

court must give blind credit without knowing the source of the hearsay statement.[10]

Without any idea where the information comes from—whether set forth in the PSI or

elsewhere in the SORA hearing record—the SORA court cannot assess the credibility of

the assertion.  Approving such an unattributed fact would be the equivalent of saying that

---

[10] People v Gonzalez (80 NY2d 883 [1992]) is instructive.  In that appeal, we considered whether hearsay testimony from a detective describing what other police officers had told him could support a finding that defendant freely consented to accompany the officers to the police precinct.  While such testimony was admissible, we concluded it did not independently satisfy the People's burden (id. at 885).  Notably for present purposes, we observed that "the finding of the hearing court that [the detective] was credible is irrelevant": "[t]hat [the detective], who had no personal knowledge of the relevant facts, testified truthfully as to what the [officers] told him has no bearing on the pertinent issue of whether the other [officers'] statements were true" (id.).

PSIs and case summaries *always* provide clear and convincing evidence of a fact or legal conclusion—a notion we rejected in <u>Mingo</u> (12 NY3d at 573).

The People also cite a case from the Fourth Department stating that a case summary alone constitutes clear and convincing evidence sufficient to uphold the SORA court's findings if the defendant fails to contest its factual allegations related to the risk factor (<u>see</u> <u>People v Hubel</u>, 70 AD3d 1492, 1493 [4th Dept 2010]).   However, <u>Hubel</u> is distinguishable.  In <u>Hubel</u>, the court rejected defendant's challenge to the Case Summary's allegations of oral sexual contact even though (as defendant argued) the accusatory instruments did not include such allegations, because the court could consider the victim's statements (<u>id.</u>).  It thus stands for the established and uncontroverted proposition that reliable evidence apart from the assertions in a case summary—such as a victim's statement—may support a court's determination that there is clear and convincing evidence of the factual basis for the risk assessment (<u>see</u> <u>Sincerbeaux</u>, 27 NY3d at 688-689).

In discussing <u>Hubel</u>, the People essentially advocate for a per se rule establishing an irrebuttable presumption about the probative value of certain types of documents in relation to the parties' burdens.  We have never cabined a SORA court's discretion to assess the record evidence.  As <u>Mingo</u> contemplates, and this appeal illustrates, case summaries and PSIs include various types of assertions, some of which may not clearly and convincingly prove anything at all, for example because they are vague or "speculative," contradicted by record evidence, or do not reflect elements of the SORA-eligible crime (<u>Mingo</u>, 12 NY3d at 573), while others may be detailed, well-supported, and conclusive as to the matter asserted.

IV.

The People argue that defendant could have testified at the SORA hearing, or else sought out evidence, such as police reports, that might have contained a statement that no force was used. According to the People, because defendant did not present such evidence, he cannot now complain about the PSI. To the extent the People literally mean that defendant's decision not to testify or present evidence in his own defense should be taken as evidence against him, that would impermissibly shift to defendant the People's burden of persuasion. <u>Mingo</u> eased the People's burden of production by eliminating the need to lay a foundation and allowing for the automatic admission of the case summary and PSI, but it did not eliminate the People's burden to establish by clear and convincing evidence a defendant's risk level.

We should certainly not adopt such a rule where, as here, it would be straightforward and require minimal effort for the Board or the People to provide a description that would eliminate doubts as to the accuracy of the PSI and Case Summary statement. Although the Assistant District Attorney argued to County Court that it would be difficult, as a general matter, to get a victim statement or grand jury testimony in cases involving children, she made no express showing that in this case—which involved a teenage victim—there were insurmountable obstacles to securing a victim statement when the PSI was drafted, or almost ten years later when the Case Summary was prepared, or in advance of the SORA proceeding. Nor is there sense to the Assistant District Attorney's argument that grand jury minutes are sealed and she did not know how to "get around that." This Court in <u>Mingo</u> recognized that grand jury minutes are appropriate evidence for SORA purposes

(12 NY3d at 573), and as defendant points out, courts rely on grand jury minutes to find the same type of fact asserted against defendant (see e.g. People v Lacewell, 103 AD3d 784, 785 [2d Dept 2013]; People v Quintana, 29 AD3d 308, 308 [1st Dept 2006]; see also People v Baxin, 26 NY3d 6 [2015]).

V.

A reasonable mind could not exclusively rely upon the statement in the PSI to conclude that "clear and convincing" evidence supported a determination that it was true (Stork Restaurant, 282 NY at 274). While case summaries and PSIs can provide admissible hearsay evidence when they relay facts obtained from other sources, we have never held that a SORA court can base its "clear and convincing *evidence*" determination solely on deference to the government's unattributed conclusions. Thus, County Court could not base its finding that the People met their burden on a statement in the PSI and Board's Case Summary that a defendant fit into certain categories that result in point increases. Under the contrary rule, the Probation Office or the Board could in effect dictate an offender's risk level by inserting conclusory statements about risk factors into a PSI or case summary, irrespective of the underlying facts. That would make a mockery of the SORA proceedings and undermine the legislature's clear directive that the SORA sentencing court must make its own findings of fact, with the goal of reaching "an accurate determination of the risk a sex offender poses to the public" (Mingo, 12 NY3d at 574).

VI.

The Board scored defendant as a presumptive level two offender on the RAI based upon a conclusory unsupported assertion in the PSI, repeated in the Case Summary, that

he had allegedly used force when committing the SORA-eligible crime. That assertion

does not constitute clear and convincing evidence of forcible compulsion and the People

provided no other evidence to meet their burden. Notwithstanding the majority's

conclusory affirmance here, the Board and those charged with preparing presentence

reports should identify the sources of factual statements and the People should ensure that

their recommendations are supported by reliable evidence, especially when relying on

hearsay. Materials proffered at a SORA proceeding should be treated with the same care

and attention to detail expected throughout our system of justice.

In defendant's case, in view of the fact that the SORA sentencing court is the finder

of fact and may reject the presumptive risk level (see Correction Law § 168-n [2]; Francis,

30 NY3d at 744), "we cannot ascertain whether [County Court] would have classified

defendant as a level [two] sex offender if it had started from the correct numerical rating"

(Cruz, 28 AD3d at 820). Therefore, I would reverse the order of the Appellate Division

and remit to County Court for further proceedings.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, without
costs, in a memorandum. Chief Judge DiFiore and Judges Stein, Fahey, Garcia and
Feinman concur. Judge Rivera dissents in an opinion in which Judge Wilson concurs.

Decided February 18, 202