People v Genao-Marial (2025 NY Slip Op 51643(U))

[*1]

People v Genao-Marial

2025 NY Slip Op 51643(U)

Decided on August 13, 2025

Criminal Court Of The City Of New York, Bronx County

Quart, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2025

Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against

Gabriel Genao-Marial, Defendant.

SCI No. 70343-25

People: Bronx County District Attorney's Office by ADA Jeremy Pfetsch

Defendant: Elana Silberman, Esq.

Dan Quart, J.

On June 11, 2025, the Court held a hearing to determine defendant's sex offender registration level. The Court now resolves the issues raised by the parties at the hearing and in their posthearing submissions. First, the Court determines whether various of the Risk Assessment Instrument (RAI) factors were established by clear and convincing evidence based on the People's presentation of documentary evidence and witness testimony at the hearing. Second, the Court determines whether to depart downward from the presumptive level three designation yielded by defendant's score on the RAI. For the reasons that follow, the Court adjudicates defendant a level three sex offender.

Background

The defendant was first arraigned in the Criminal Court on October 9, 2024, at which time the People filed a felony complaint sworn to by Supervising Parole Officer Michael Tarello. The felony complaint charged defendant with possessing an obscene sexual performance by a child, in violation of Penal Law §263.11, which is a Class E felony. The felony complaint alleges that on or about October 8, 2024, at approximately 9:45 PM, defendant possessed an obscene performance which includes sexual conduct by a child less than sixteen years of age, to wit: a file that contained an image of an approximately five to six year old girl laying next to an adult male erect penis.

On January 23, 2025, defendant pleaded guilty via Superior Court Information to one count of possessing an obscene sexual performance by a child in exchange for the promised sentence of ten years of probation with sex offender conditions and the forfeiture of defendant's computer and electronic devices. Pursuant to the New York State Sex Offender Registration Act (SORA), defendant's conviction for possessing an obscene sexual performance by a child requires that he register as a sex offender. See Correction Law Article 6-C.

The People only required that defendant plead guilty to one count of possessing an obscene sexual performance by a child. During the plea colloquy, the Court factually allocuted [*2]defendant as follows:

THE COURT: [D]o you admit that on or about October 2nd of 2024 . . . you did commit the offense of possessing an obscene sexual performance by a child in violation of Penal Law Code Section 263.11 in that knowing the character and the content thereof, you knowingly had in your possession or control or you knowingly accessed with intent to view an obscene performance which included sexual conduct by a child less than 16 years of age, which was 1 digital file . . . that contained an image in which there were five sequenced images, wherein the fifth image of an approximately 12-year-old girl who was initially laying naked on the carpet with her genitals exposed and then images ending with an image of the female minor's legs apart as an adult male's erect penis penetrates her?

DEFENDANT: Yes.

The plea judge advised defendant that his SORA level would be determined at a separate hearing. The matter was adjourned for sentencing and the SORA hearing.

On June 11, 2025, this Court presided over the SORA hearing. At the hearing, the People relied upon several items of documentary evidence, including: the RAI; the minutes from defendant's January 23, 2025 guilty plea; the felony complaint in the instant matter; the felony complaint associated with defendant's 2015 criminal case; certified records pertaining to defendant's 2017 Youthful Offender adjudication for promoting an obscene sexual performance by a child; the written conditions of probation associated with the 2017 adjudication; and a forensic examination report from the Department of Probations Intelligence Cyber Unit containing materials discovered on defendant's cellphone. The People also presented as a testifying witness Supervising Probation Officer Gonzalez, who prepared the forensic report. The defense did not present any live witness testimony.

At the hearing, the People argued that defendant should be assessed a total of 125 points, which would necessitate a presumptive level three risk designation. The People alternatively requested that, should the Court disagree with the People's assessment regarding the individual risk factors, the Court should grant an upward departure to Level III and identified aggravating factors, including the number of images possessed, the length of time defendant has been viewing Child Sexual Abuse Material (CSAM), and the nature of the images.

The Court permitted the parties an opportunity to provide posthearing submissions. In his posthearing submission, defendant contested several of the point assessments enumerated by the People, which would necessitate a presumptive level one risk designation. The defendant also argued that if the Court were to find him a presumptive risk level three, the Court should nevertheless depart downward to level one.

Findings of Fact and Conclusions of Law

As explained by the Court of Appeals, "A SORA proceeding, which is civil in nature, determines the risk of reoffense by a person convicted of a qualifying sex offense and requires that individual to register with law enforcement officials according to that risk level" (People v Pettigrew, 14 NY3d 406, 408 [2010]). To aid in that determination, the Legislature created a Board of Examiners of Sex Offenders (Correction Law § 168-l[1]), which has developed Guidelines "to assess the risk of . . . a repeat offense by . . . sex offender[s] and the threat posed to the public safety" (Correction Law § 168-l[5]). Those Guidelines contain the RAI, which provides a risk level by assessing offenders points based on factors related to their risk of [*3]reoffense and the danger they pose (Guidelines at 3). At a SORA hearing, the State is represented by the District Attorney's Office, "who shall bear the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n[3]; People v Mingo, 12 NY3d 563, 571 [2009]). The Board has instructed that points under the RAI's factors should not be assessed unless that factor has been established by clear and convincing evidence (Guidelines at 5). The risk level designation determined by application of the RAI is merely presumptive; a court may depart upward or downward to avoid an under- or over-assessment of the defendant's risk (People v Johnson, 11 NY3d 416, 421 [2008]).

I. RAI Point Assessment
The Court first addresses the various RAI factors and determines the appropriate point assessment for each.

Factor One: Use of Violence (Zero points assessed)
This factor is not disputed by the parties. There was no physical contact between the defendant and victims. Zero points are assessed.

Factor Two: Sexual Contact with Victim (Zero points assessed)
This factor is not disputed by the parties. There is no allegation that any sexual contact occurred between the defendant and victims. Zero points are assessed.

Factor Three: Number of Victims (30 points assessed)
This factor is disputed by the parties. Under Factor 3, 30 points should be assessed "if there were three or more victims" (Guidelines at 10). In People v Johnson, 11 NY3d 416 [2008], the Court recognized that children depicted in child pornography constitute victims for purposes of the Sex Offender Registration Act.

The People contend that because of the forensic report, and witness testimony that ten images containing CSAM of different children were found on the defendant's device, they have established, by clear and convincing evidence, that there were three or more victims in the instant offense. The People request an assessment of thirty points under this factor.

The defendant argues that zero points should be assessed under this factor. In support of this contention, defendant claims that the scoring of each image as a victim creates an inaccurate assessment of the defendant's risk of reoffense. In this case, the defendant was arraigned on a felony complaint which contained a sworn allegation that defendant possessed an image of an approximately five to six year old girl laying next to an adult male erect penis. The defendant then pleaded guilty to possessing an image in which there were five sequenced images, wherein the fifth image was of an approximately 12 year old girl who was initially laying naked on a carpet with her genitals exposed and then images ending with an image of the female minor's legs apart as an adult male's erect penis penetrates her. At the SORA hearing, the People presented a flash drive containing an unredacted version of the Forensic Report to Officer Gonzalez, who identified it as the report he created and placed on the drive. The report was [*4]marked for evidence and published to the Court. The Court was shown seven different videos which depicted seven different child victims. The Court was also provided the forensic report, which contained the ten files found on defendant's computer. Upon review, the Court found that at least ten different victims were depicted in the files.

The Court assesses thirty points for this factor. The People have established by clear and convincing evidence that there were at least three victims. Defendant's contention that scoring images as victims does not properly correlate with an increased risk of reoffense is unsupported by evidence.

According to the Guidelines, "the existence of multiple victims is indicative of compulsive behavior and is, therefore, a significant factor in assessing the offender's risk of reoffense and dangerousness" (Guidelines at 10). There is no indication that this statement does not apply to child pornography offenses. Furthermore, assessing the risk of reoffense is not the sole purpose of the factors. As explained in the Guidelines, "[i]t is important to note that the risk level seeks to capture not only an offender's risk of reoffense but also the harm posed by a particular offender should they reoffend" (Guidelines at 2). Defendant's victimization of multiple children directly correlates with how much harm he could cause.

The imposition of points under Factor 3 in child pornography cases was affirmed in People v Gillotti 23 NY3d 841 [2014]. As the Gillotti Court writes regarding Factors 3 and 7, "the presence of those factors in child pornography cases increases the offender's potential to psychologically harm a greater number of children to a greater degree" (id. at 857).

Factor Four: Duration of Offense Conduct with Victim (Zero points assessed)
This factor is not disputed by the parties. There is no allegation that the defendant engaged in a continuing course of sexual contact with the same victim.

Factor Five: Age of Victim (Thirty points assessed)
This factor is disputed by the parties. The People contend that, because the felony complaint states that defendant possessed an image of a victim that was approximately 5-6 years old, the People have established, by clear and convincing evidence, that the defendant possessed an obscene sexual performance of a child that was 10 years old or younger. If established, defendant should be assessed 30 points under this factor (Guidelines at 11).

The defendant does not dispute the sufficiency of the People's proof at their SORA hearing. Instead, the defendant challenges the imposition of points on the RAI under factor 5 in child pornography cases. Defendant argues that zero points should be assessed, as defendant's possession of images does not indicate any actual contact with real-life children, or any risk of harm to the community.

The Court assesses thirty points for this factor. There is no evidence before the Court showing contacts between the defendant and children. However, in People v Johnson, 11 NY3d 416, 420 [2008], the court established that children depicted in child pornography constitute victims of sex offenses within the meaning of the Sex Offender Registration Act.

The defendant argues that passive, non-contact, possession only cases do not pose a risk to the community. The Court rejects this claim. Defendant's contentions disregard not just the risk to community, but the real harm caused by consumers of child pornography to both the [*5]victims depicted and potential future victims. In Paroline v United States, 572 US 434, 439-40, [2014], a decision regarding a victim of child pornography's request for restitution, the Supreme Court directly addresses the harm inflicted by offenders, saying:

"The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by [its] circulation" (id. at 1716-1717).
Furthermore, a lack of "real life contact with children" does not correlate to the risks identified by the Board in their Sex Offender Guidelines. The Board states that:
"Offenders who target young children as their victims are more likely to reoffend. Moreover, such offenders pose a heightened risk to public safety since young children lack the physical strength to resist and can be more easily lured into dangerous situations than adults" (Guidelines at 11 [internal citations omitted]).

Despite the "hands-off" nature of the offense, the defendant's consumption of child pornography created a demand for child pornography, which encouraged others to sexually assault victims in order to produce the material. Those victims were children who were especially vulnerable due to their age. Thirty points are assessed.

Factor Six: Other Victim Characteristics (Zero points assessed)
This factor is not disputed by the parties. There is no allegation that the victims suffered from any sort of incapacity or helplessness beyond their age, which was accounted for in Factor 5. Zero points are assessed.

Factor Seven: Relationship with Victim (20 points assessed)
This factor is disputed by the parties. Under Factor 7, 20 points should be assessed when an "offender's crime was directed at a stranger" (Guidelines at 12).

The People assert that defendant should be assessed 20 points under this factor, as they have proved by clear and convincing evidence that he did not know the victims depicted in the videos.

Defendant does not dispute the sufficiency of the People's proof at the SORA hearing. Rather, defendant challenges the imposition of points under Factor 7 in child pornography cases.

Defendant acknowledges the lawfulness of assessing points under Factor 7 in child pornography cases. However, defense counsel contends that Factor 7 was established to assess a defendant's likelihood of grooming or enticing future victims. Counsel also asserts that since there is no allegation that defendant contacted a minor, attempted to contact a minor, engaged in grooming, produced pornographic material, or attempted to distribute said material, zero points should be assessed under this factor. The Court accepts the defendant's claim that he never engaged in the actions named above. However, the Court rejects the contention that the factor was established for the purposes alleged by defense counsel.

The RAI was established for purposes of creating an objective instrument that "includes factors related to the offender's current offense, his criminal history, his post-offense behavior . . . and his planned release environment" (Guidelines at 3). Factors are not assessed based on speculation about whether an offender will engage in future behavior, rather, they are assessed [*6]based on the absence or presence of clear and convincing evidence that they apply to the instant offense. Furthermore, while it is true that Factor 7 applies to offenders who "groom" victims, it also applies to offenders who direct their crimes at strangers. As it is undisputed that defendant's victims were strangers, 20 points are assessed.

Factor Eight: Age at First Sex Crime (10 points assessed)
The parties do not dispute this factor. Defendant pleaded guilty to promoting an obscene sexual performance by a child when he was 19 years old. 10 points are assessed.

Factor Nine: Number and Nature of Prior Crimes (30 points assessed)
This factor is not disputed by the parties. Defendant concedes that he was previously adjudicated a youthful offender for a sex offense in 2017. Thirty points are assessed.

Factor Ten: Recency of Prior Felony or Sex Crimes (Zero points assessed)
This factor is not disputed by the parties. Defendant was not convicted of a felony or sex crime within the last three years. Zero points are assessed.

Factor Eleven: Drug or Alcohol Abuse (Zero Points Assessed)
This factor is not disputed by the parties. There is no allegation that defendant has a history of substance abuse or was abusing substances at the time of the offense. Zero points are assessed.

Factor Twelve: Acceptance of Responsibility (Zero points assessed)
This factor is not disputed by the parties. Defendant accepted responsibility for his actions. Zero points are assessed.

Factor Thirteen: Conduct While Confined (Zero points assessed)
This factor is not disputed by the parties. There is no allegation that defendant's conduct while under supervision for the current offense has been unsatisfactory. Zero points are assessed.

Factor Fourteen: Supervision (5 points assessed)
This factor is disputed by the parties. The People request five points, as the defendant was sentenced to ten years of probation as part of his plea, placing him under supervision.

Defendant requests a score of zero points, citing his sex offender probation, which includes therapy groups, and limitations on where he can live and work. As to this factor, the Guidelines state that, "This category is premised on the theory that a sex offender should be supervised by a probation or parole officer who oversees a sex offender caseload or who otherwise specializes in the management of such offenders" and "[a]n offender who is released [*7]without such intensive supervision is assessed points in this category" (Guidelines at 17).

The Court assesses five points. It is undisputed that defendant was promised a sentence of ten years probation. However, that promised sentence does not guarantee defendant's release under the specialized supervision referred to in the guidelines. There is no indication that the treatment defendant will receive will be managed or supervised by a probation officer who oversees a sex offender caseload, nor that said probation officer has any specialization in the management of sex offenders.

Factor Fifteen: Living or Employment Situation (Zero points assessed)
This factor is not disputed by the parties. There is no allegation that defendant's living or employment situation is inappropriate. Zero points are assessed.

Total Risk Factor Score: 125
The Court concludes that the appropriate score on the RAI is 125 points, based on the risk factors that the Court has found proven by clear and convincing evidence. A score of 125 yields a presumptive risk level three designation. Nevertheless, defendant has sought a downward departure to a presumptive level one risk designation. The Court now turns to this issue.

II. Upward Departure
The People's request for an upward departure is rendered moot given the Court's presumptive Level III risk designation.

III. Downward Departure
While the RAI places defendant at level three, that placement is presumptive and the Court may depart downward to a lower risk designation (Howard, 27 NY3D at 341-42; Barr, 205 AD3d at 742-43). In his posthearing submission, defendant has sought, in the alternative, a downward departure to level one. The Court now addresses this application.

A court's decision to grant or deny an application for a downward departure is governed by the three-step analysis handed down in Gillotti. At the first step, the court must decide, as a matter of law, whether the defendant has identified a mitigating circumstance inadequately accounted for by the Guidelines (Gillotti, 23 NY3d at 861). At the second step, the court must decide whether the defendant has established the existence of that mitigating circumstance by a preponderance of the evidence (id. at 861-863). At the third step, the court "must exercise its discretion by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and risk of sexual recidivism" (id. at 861).

Here, defendant argues that he is entitled to a downward departure to level one based on the State of New York Board of Examiners of Sex Offenders Position Statement, which identifies a list of factors in child pornography cases that may be used to depart from the presumptive level determined by the Risk Assessment Instrument. These factors include: "the [*8]number of images possessed (10,000 is more concerning than <100), paid subscriptions to access child pornography and categorized/organized material in their child pornography collection" (Position Statement). Defense counsel points to Officer Gonzalez's testimony that defendant possessed eight or nine images, that defendant did not pay to subscribe to child pornography sites, and that defendant did not organize or categorize the child pornography files. While it is true that defendant did identify mitigating circumstances, the Court must weigh those factors against the aggravating factors presented by the People to determine whether a downward departure is appropriate. While the People's request for an upward departure is moot, as defendant was assessed the highest tier, the People identified aggravating factors in their request, including the fact that this offense occurred while defendant was on probation for a prior sex offense adjudication. Defendant does not dispute that he possessed an obscene sexual performance by a child while already on probation for promoting an obscene sexual performance by a child. While defendant's criminal history was accounted for by the Guidelines, the fact that he violated multiple of the sex offender conditions of his previous probation was not. Under these circumstances, the Court finds that this aggravation outweighs the mitigation proffered by defendant and that a level three risk designation does not over-assess defendant's likelihood of re-offense or the harm that he might cause in the event of reoffending.

Conclusion

For the reasons set forth above, defendant is adjudicated a level three sex offender. This constitutes the decision and order of the court.

Dated: August 13, 2025
Bronx, NY
HON. DAN QUART, J.C.C